TAM:NJB:all

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER FURNARI** | : | **CIVIL NO. 4:CV-06-0342** |
| **Petitioner,** | : | |
| | : | **(Petition Filed February 15, 2006)** |
| **v.** | : | |
| | : | **(Muir, D.J.)** |
| **UNITED STATES PAROLE** | : | |
| **COMMISSION, et al.,** | : | |
| **Respondents** | : | **ELECTRONICALLY FILED** |

## EXHIBITS IN SUPPORT OF RESPONDENT'S RESPONSE TO THE
## PETITION FOR WRIT OF HABEAS CORPUS

**THOMAS A. MARINO**
**United States Attorney**

**NATHANAEL J. BYERLY**
**Special Assistant U.S. Attorney**
**Attorney I.D. No. PA85679**

**ANITA L. LIGHTNER**
**Paralegal Specialist**

**U.S. Attorney's Office**
**228 Walnut Street, 2nd Floor**
**Harrisburg, PA 17108-1754**
**Phone: 717-221-4482**
**Fax: 717-221-2246**

**Dated: May 15, 2006**

## CERTIFICATE

I, SHARON GERVASONI, Attorney in the Office of General Counsel, United States Parole Commission, 5550 Friendship Boulevard, Chevy Chase, Maryland, 20815, certify that the attached documents are true copies of documents contained in the parole file of **Christopher Furnari,** Register Number **19815-054,** reviewed by me on the date stated below.

IN WITNESS WHEREOF, I have signed this 3rd day of May, 2006, and have affixed the seal of the United States Parole Commission.

Sharon Gervasoni
Attorney
U.S. Parole Commission



S Department of Justice
ited States Parole Commission
30 Friendship Boulevard
evy Chase, Maryland 20815-7201

**Notice of Action**



**EXHIBIT**

tabbies

*1*

ıme: FURNARI, Christopher

:gister **Number:** 19815-054                    **Institution:** Allenwood FCI

the case of the above-named parole action was ordered:

ıntinue to a 15 Year Reconsideration Hearing (December 2011).

### ?ASONS:

ɔur offense behavior has been rated as Category Eight severity because it
ıvolved murder and multiple separate extortion through racketeering offenses.
ɔur salient factor score (SFS-95) is 8.  You have been in federal confinement
; a result of your behavior for a total of 121 months as of 12/15/96.
ɪidelines established by the Commission indicate a range of 100+ months to be
?rved before release for cases with good institutional adjustment and program
:hievement.  After review of all relevant factors and information presented,
decision more than 48 months above the minimum guidelines is warranted because
ɔu were involved in the hierarchy, first as a Capo and later as Consigliere of
major organized crime organization and were involved either directly in the
lanning or approval of the murders of numerous individuals.

; required by law, you have also been scheduled for a statutory interim hearing
uring December 1998.

**ALIENT FACTOR SCORE (SFS-95):**   Your salient factor score items have been
omputed as shown below.  For an explanation of the salient factor score items,
ee the reverse side of this form.

**TEM A[ 1 ]; B[ 1 ]; C[ 2 ];  D[ 1 ]; E[ 1 ]; F[ 1 ]; G[ 1 ]  Total[ 8 ]**

**.ppeals Procedure:**
he above decision is appealable to the National Appeals Board under 28 C.F.R. 2.26:

January 8, 1997

Docket Clerk: dlw

**EXHIBIT**

I.S. **Department of Justice**
nited States Parole Commission
550 Friendship Boulevard
hevy Chase, Maryland 20815-7201

NOTICE OF ACT  N ON APPEAL

**EXHIBIT**

2

AME: Furnari, Christopher          REG. NO. 19815-054          INST: Allenwood FCI

he National Appeals Board examined the appeal of the above named and ordered the following:

ffirmation of the previous decision.

**ESPONSE**:

ou have properly been held accountable for murders committed to further the
urposes of the Luchese or other crime families. At a minimum, as the capo of
 crew in the Luchese family, you were in a position to be informed of murders
rdered by the boss of the family.   Given the hierarchical nature of the
rganization, it is likely that you directed the murderous acts of your crew
embers.   And, in fact, the Parole Commission finds the information from the
.S. Attorney's Office on your personal responsibility for several of the
urders (victims Schliefer, Taglianetti, and DeCicco) and attempted murder
victim Abinanti) to be credible and reliable, even though much of the
nformation may have come from Anthony Casso, one of the most violent members
f your organization.   Reliable information on crimes committed through La Cosa
ostra activities has been provided by members of thē criminal organization,
ncluding those who have committed violent crimes.   Even if Casso has continued
o commit or plot other crimes after his debriefing by federal law enforcement,
his does not disqualify him as a reliable source concerning your criminal
ctivities within the Luchese family.   In many cases, Casso's information is
orroborated by information from other sources such as Carew and D'Arco.

our parole denial is warranted because you approved or participated in the
lanning of a contract murder (Taglianetti), the murder of a potential
nformant/witness (Schliefer), and a murder and attempted murder to further the
ims of an on-going criminal organization (DeCicco and Abinanti, respectively).
ny one of these crimes would support a parole denial.   There are no mitigating
actors, including your age, that justify your parole when weighed against the
ggravated nature of the crimes.

either due process, parole statutes nor parole regulations require that you be
ranted access to reports which have not been provided to the Parole Commission
or its consideration.   Therefore, you are not entitled to discovery of source
aterials that the U.S. Attorney's Office may have used to prepare letters
ecommending against your parole.

ou have failed to show that the Parole Commission cannot fairly decide your
ppeal simply because the same Assistant U.S. Attorney who opposed your parole
t your hearing made a general presentation on the topic of organized crime to
gency members and staff two months after the initial decision in your case.
here is also no evidence that any procedures were violated in the Assistant

ugust 19, 1997                    National Appeals Board                    Docket Clerk: dmj

**EXHIBIT**

2

 

.S. Department of Justice                    NOTICE OF ACTION ON APPEAL
nited States Parole Commission
'50 Friendship Boulevard
1evy Chase, Maryland 20815-7201

AME: Furnari, Christopher        REG. NO. 19815-054        INST: Allenwood FCI

.S. Attorney's representation of his office's views in the course of the parole
etermination.

ll decisions by the National Appeals Board on appeal are final.

ugust 19, 1997                    National Appeals Board                    Docket Clerk: dmj

EXHIBIT

3

## SIH/REVIEW HEARING SUMMARY

| | |
|---|---|
| **Hearing Type:**  . . . SIH | **2/3 or MR Date:**  . . . . .  11-24-2044 |
| **Name:**  . . . . . . . . . FURNARI, Christopher | **Projected MR Date:** . . |
| **Reg No:**  . . . . . . . . 19815-054 | **Full Term Date:**  . . . . .  11-15-2086 |
| **Hearing Date:**  . . . 12-9-1998 | **Months in Custody:** . .  145 |
| **Institution:**  . . . . . . Allenwood FCI | **As Of:**  . .  12-9-1998 |
| **Examiner:**  . . . . . . Jeffrey S. Kostbar | |

**Recommended Release**  No change in 15-year reconsideration date (December, 2011).

### I.    Previous Commission Action:

The subject's initial hearing Notice of Action was issued on January 8, 1997 and ordered that the subject be continued to a 15-year reconsideration hearing (December 2011). The subject was not designated as an original jurisdiction case.

This examiner believes that the subject should be an original jurisdiction case. He is a major organized crime figure who is reported to have been significantly involved with 14 murders while a capo and consigliari.

The subject appealed his Parole Commission decision; by Notice of Action dated August 19, 1997, the decision was affirmed.

The subject is currently 74 years old and serving a 100 year sentence.

### II.    Codefendants:

The subject has numerous codefendants as noted in the U.S. Attorney report attached to the presentence investigation.

### III.    Institutional Adjustment And Release Plans:

The subject has had excellent institutional adjustment and has not received any incident reports during his 12 years of incarceration. If he is ever released, he hopes to reunite with his wife who lives in Staten Island, NY.

### IV.    Fines, Restitution, Court Assessment:

The subject has a $240,000 committed fine on the record. He paid a $175 of a non committed

FURNARI.198

EXHIBIT

3



fine and the remaining $725 was declared uncollectible.

## V.    Representative:

David Breitbart, Attorney at Law, 52 Dwane Street, New York, NY 10007-1206. Also present at the hearing was Attorney Steven Kareagener. As a courtesy he was allowed to sit in on the hearing but was not the official representative.

## VI.   Risk:

As a category Eight offender, the subject's guidelines have no maximum. He is a very significant risk to the community given the fact that he is a lifetime member of organized crime.

## VII.  Evaluation:

This examiner was originally informed that the representative in this case would arrive between 10:30 a.m. and 11:00 a.m. This was the last case on the docket. At 11:12 a.m. the representative had not arrived. This examiner called in Mr. Furnari and gave him the opportunity to proceed without representation. He desired not to proceed but he refused to request a continuance. This examiner adjourned the hearing based upon the presumption that the representative would not appear, Mr. Furnari was sent back to his unit.

Approximately 10 minutes later, and as this examiner was making ready to leave the institution, the representatives did arrive. I initially indicated to them that the case would not be heard and would be heard again on the next docket in February 1999 as Mr. Furnari had been sent back to his unit. However, I reassessed this position and informed the attorneys that I would hear the case and they were processed in the hearing room approximately 25 minutes later. Mr. Furnari was returned to the visiting room from his unit.

The subject's attorney did explain that they drove from New York and were caught up in traffic and had so informed institution staff that they would be late, however this information was never provided to this examiner by the institution staff. Presumably they must have talked to a correctional officer in the main building and not to the case management staff.

The scope of today's hearing, which was explained to the subject's representative and himself, is a statutory interim hearing on a case wherein a 15-year reconsideration hearing is a standing decision. It was explained that this was not a full de novo hearing.

It is counsel's request that the Commissioner consider his verbal arguments today and his written arguments and upon his review so order a full de novo hearing wherein the 15-year reconsideration hearing date can be advanced in this case.

Concerning this statutory interim hearing situation, this examiner is recommending that no

change be made in the 15-year reconsideration hearing date. While the subject is a 74-year-old individual suffering from aging normal to that age, he is a lifetime member of organized crime in the New York area who rose to a very high position in the crime family. Specifically, he was able to rise to the position of Consigliere and function on a major level as a member of the Commission.

Concerning the request for a full de novo hearing, and an ultimate advancement of the 15-year reconsideration hearing, this examiner notes as follows:

First, counsel has submitted to the court a 2241 submission which has been pending for 10 months. I was informed by counsel that the government has fully responded to this submission and that the Parole Commission Legal Office has also been active in this case and has responded to the submission. This examiner believes that it is imperative that the attorney for the Commission responsible for this case be consulted about this case by the Commissioner and that the Commission's legal response to the filing be included as information in the inmate file for all Reviewers of this case. When I returned to the office I included the government reponse to the 2241 in the file for the Commissioner review.

Secondly, counsel argues that there is a great deal of information he has submitted to the Commission which was unknown to the Commission when making either the original decision or the National Appeals Board decision. This information bears directly on the credibility of one of the government's prime witnesses, Anthony Casso. In short, counsel argues that Anthony Casso was personally responsible for 36 murders and was culpable in over 180 murders. Mr. Casso began working with prosecutors and was ultimately kept in a witness-protection program unit by the Bureau of Prisons.

Counsel argues that he did present the argument previously to the Commission that Mr. Casso was not credible and not reliable. However, he did not have documentation to back up this argument and the Commission continued to believe in the reliability of Mr. Casso's statements based upon a presentation by the U.S. Attorney's office that the information supplied by Mr. Casso as credible.

Defense now presents the argument that at the time the U.S. Attorney's office was presenting to the Parole Commission that Mr. Casso was reliable and that his information was reliable, the government actually knew that Mr. Casso was a liar and engaged in new criminal conduct while incarcerated by the Bureau of Prisons. That new conduct involved bribing government officials in a witness-protection facility, smuggling and attempted murder twice of a man who was taking about himself.

Defense points out that Mr. Casso breached his own cooperation agreement with the government, was deemed to be a liar, and in a government affidavit dated December 17, 1997 by George Stamboulidis, Assistant U.S. Attorney, it was pointed out that Mr. Casso had made up lies about other organized crime figures by implicating those other organized crime figures n criminal activities.

FURNARI.198                                        Page 3 of 4



They also pointed out that the December 4, 1995 letter of David Kelley, Chief of the Organized Unit, exonerated Mr. Furnari from the 1979 murders which are detailed in the PSI and the original U.S. government position. This is due to the fact that it was later found the subject was functioning as a capo and not a consigliere at the time those murders occurred.

It is believed by this examiner that the Commission most probably has set forth a position on these matters as the Commission has apparently responded to the defense submission. This examiner did not have a copy of that position until I obtained it after the hearing and included it in the file. It is noted that when the Commission last reviewed this case by the National Appeals Board, the Commission did state the position that while the subject may have not provided truthful information concerning other individuals, that was not a reason to disqualify him as a reliable source concerning Mr. Furnari's criminal activities.

This examiner believes, given the information which I have (which initially excluded the government's response to the submission of defense counsel, but it has now been made a part of the file) justify a "no reopen" decision in this case. The reasons the Commission gave in the National Appeals Board's Notice of Action dated August 19, 1997 remain valid and appropriate and a de novo hearing to consider advancing the 15-year reconsideration hearing date should not be scheduled.

This examiner would note that there appears to be only one other addition to the original defense petition which is the supplemental affidavit by defense counsel, Steven Kartagener, dated April 24, 1998 which has attached the affidavit from George Stamboulidis, Assistant U.S. Attorney, which was previously referred to.

In a nutshell, what the defense counsel would like the Commission to believe is that the two D'arco and Casso) government informants were both such liars that none of the information they provided is credible and that the case should be reopened. There may have been other informants or souces of information available to the AUSA office which he did not disclose at the time of his testimony. Because the AUSA was alledgely so "misinformed" by his informants, his prior testimony that our subject was involved in 14 murders by his crew when he was a capo and later when he was consigliari, should not be considered credible.

This examiner comes to the conclusion that it is credible to believe that a lifelong organized crime member who functioned at very high levels within the organization would resonably be expected to know of and participate in numerous violent crimes, to include murder on a regular basis. This after all is the nature of such organized criminal activities. Consequently, while there may indeed be cause to believe that the informants for the government were disreputable characters who may not have been truthful all of the time, this does not invalidate the overnments case and their testimony as to the actions of this individual in the organization.

This examiner believes that it is significantly more likely than not that Mr. Furnari knew of, nd had direct or indirect responsibility for multiple murders given his position in the rganized crime family. This examiner would continue to find the information provided by the



AUSA and his testimony to be valid.

Only if the AUSA office were to substantially reverse it's position regarding the subject's involvement in organized crime activities would this examiner suggest a re-review of this matter. Such information would need to rise to the level of an exoneration of the subject relative to murderous criminal acts as indicated by the AUSA office previously. I do not find defense counsel position persuasive in matter.

## VIII. Recommendation:

No change in 15-year reconsideration (December, 2011)

## IX.    Reasons:

CLW
December 17, 1998

J.S. Department of Justice
nited States Parole Commission
550 Friendship Boulevard
hevy Chase, Maryland 20815-7201

**Notice of Action**

**EXHIBIT**

4

ame: FURNARI, Christopher

egister Number: 19815-054                    Institution: Allenwood FCI

ı the case of the above-named, the following parole action was ordered:

o change in 15 Year Reconsideration Hearing in December, 2011.

he above decision is appealable to the National Appeals Board under 28 C.F.R. 2.26.

ou may obtain appeal forms from your caseworker or U.S. Probation Officer and they must be filed with
ıe Commission within thirty days of the date this Notice was sent. Copies of this Notice are sent to your
ıstitution and to your probation officer. In certain cases, copies may also be sent to the sentencing court.
ou are responsible for advising any others, if you so wish.

### EASONS:

.etroactivity does not apply. Neither your recalculated severity rating (old Category Eight; new Category
light) nor your recalculated salient factor risk category (old Category Very Good, old score 8; new Category
'ery Good, new score 8) is more favorable. This statement means that a finding has been made by the
'arole Commission at your hearing that no regulatory or procedural changes have been made by the Parole
'ommission since your last hearing which would positively affect your case in terms of Offense Severity or
alient Factor Scoring.

ıs required by law, you have also been scheduled for a statutory interim hearing during December, 2000.

c:        U.S. Probation Officer
          Southern District of New York
          500 Pearl Street
          Sixth Floor
          New York, NY 10007

**Date: December 29, 1998**

Clerk: frm

BOP-ALM                    Page 1 of 1                    FURNARI.T98

**J.S. Department of Justice**                    **NOTICE OF ACTION ON APPEAL**
Jnited States Parole Commission
550 Friendship Boulevard                                            **EXHIBIT**
Jhevy Chase, Maryland 20815-7201
                                                                        _5_

Jame: Furnari, Christopher

Register Number: 19815-054            Institution: Allenwood FCI

Fhe National Appeals Board examined the appeal of the above named and ordered the following:

Affirmation of the previous decision.

**REASONS**:

n response to your claim that the decision was based on erroneous information, the evidence you
have presented does not persuade the Commission that the information it has relied upon is
naccurate. Your request for a de novo hearing is denied.

All decisions by the National Appeals Board on appeal are final.

.

**EXHIBIT**
_5_

Date: April 2, 1999          National Appeals Board          Clerk: pgn

BOP-ALM                      Page 1 of 1                      FURNARI.198

 

**EXHIBIT**

tabbies

_6_

**U.S. Department of Justice**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

Name: FURNARI, Christopher

Register Number: 19815-054                    Institution:    Allenwood FCI

In the case of the above-named, the following parole action was ordered:

Reopen and schedule for a de novo hearing before December 27, 2000.

**REASONS**:

Decision of the Court of Appeals for the Third Circuit and the United States District Court for the Middle District of Pennsylvania.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your U.S. Probation Officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

fc:        U.S. Probation Office
           Southern District of New York
           500 Pearl Street
           Sixth Floor
           New York, NY 10007-1312

Date: October 31, 2000                         Clerk: dlw

BOP-Allenwood    FCI              Page 1 of 1              FURNARI.198

**EXHIBIT** _6_



<SUMCODE-INITIAL_SUM>

## INITIAL HEARING SUMMARY

**Offense of Conviction - Count 1 Racketeering Conspiracy; Count 2 Racketeering; Count 5, 7, 9, 11, 13, 15; Payment to an Employee Representative; Counts 3, 4, 6, 8, 10, 12, 14 and 16 Through 21 Extortion.**

| | |
|---|---|
| **Name** .......... :FURNARI, Christopher | **2/3 or MR Date** ..... : 11/24/2044 |
| **Reg No** ......... :19815-054 | **Projected MR Date** .. : |
| **Hearing Date** .... : 12/8/2000 | **Full Term Date** ..... : 11/15/2086 |
| **Institution** ...... :Allenwood FPC | **Months in Custody** .. : 169 |
| **Examiner** ....... :Jeffrey S. Kostbar | **As Of** ... : 12/9/2000 |
| | **Severity Rating** ..... : Eight |
| | **Salient Factor Score** . : 8 |
| | **Guideline Range** .... : 100+ |

**Recommended Release** Continue to 15 Year Reconsideration Hearing December 2015 and refer for Original Jurisdiction Consideration.

### I.Procedural Issue:

Upon this examiner's arrival, I found Attorney David Breitbart of 52 Duane Street, New York, NY 10007-1206 sitting at the hearing table prepared to function as the subject's representative. Also present was Attorney Steven Kareagener. This examiner had conducted a Statutory Interim Hearing in this case December of 1998 and the same two attorneys were present. At that hearing, strictly as a courtesy, I allowed the second attorney to sit in on the hearing but to not function as an official representative. Although I explained the rules concerning representatives to Mr. Breitbart at that hearing I was persuaded to make an exception in 1998.

In spite of this, Mr. Breitbart once again appeared with Attorney Steven Kareagener. I informed Mr. Breitbart that I would not permit the second attorney to be present and again explained the rules to him. He objected to the removal of Mr. Steven Kareagener from the room and went on record with his objections. This examiner believes that Mr. Furnari is entitled to the same due process consideration as other inmates and that in vast majority of those cases they are allowed one representative. Consequently, this examiner has held Mr. Furnari to that standard at this hearing and Mr. Kareagener was removed from the room with objections from Mr. Breitbart.

This examiner explained to Mr. Furnari and Mr. Breitbart that this was to be an Initial Hearing as ordered by the Parole Commission in response to litigation which they had filed. I

FURNARI.198



informed Mr. Breitbart of my intent to deal with issues not related to the offense behavior and offense severity first. Following that, I indicated that I would deal with issues of the offense severity and criminal conduct and allow Mr. Furnari and his representative to respond to the government version of the overall offense behavior on a point by point basis. Particularly, the letters from Assistant United States Kelly and the allegations contained therein. Mr. Furnari and his counsel indicated that they had had all of this material disclosed to them and were prepared to respond.

However, Attorney Breitbart objected to the procedural manner in which I was to proceed with this hearing. He desired to give an opening argument, similar to the type attorneys present in criminal cases. This examiner denied Mr. Breitbart that opportunity and indicated that he would have full opportunity to bring forth everything he wanted to bring forth during a summation which I would allow he and Mr. Furnari.

This examiner refers the reader to prior hearing summaries and pre-hearing evaluations dating from 1996. In addition, I refer the reader to Assistant US Attorney Kelly's letter of 8/1/96 and 9/25/2000.

Examiner Pinner has prepared an excellent and lengthy Initial Pre-hearing Assessment for this hearing. Rather than dictate redundant information I again refer the reader to that Pre-hearing Assessment typed on 12/5/2000.

In short summary, Christopher Furnari was a Capo and then a Consigliere of the Lucchese Crime Family. When he was consigliere, he was also a member of the "Commission" the National Ruling Body of La Cosa Nostra, which was made up of representatives of the various crime families. He was convicted in 1986 of extortion based RICO violations and sentenced to 100 years. The subject appeared before the Commission for his Initial Hearing in this case on 12/3/96. In addition to the information contained in the Pre-sentence Investigation, the Commission received additional information in a letter dated 8/1/96. The letter was prepared by Assistant US Attorney David Kelly, Chief of the Organized Crime Unit in the S/NY, which indicated that several murders had been committed by the subject's crew and by the Family, during the time the subject held positions Capo and Consigliere of the Lucchese Crime Family.

Much of the information which supported the Category Eight finding of the Parole Commission concerning the murderous behavior was obtained from Anthony (Gaspipe) Casso by way of Assistant US Attorney Kelly. There was much argument at the Initial Hearing from the subject's representative that Casso was not reliable. The Parole Commission found that the subject was involved in the murders of Schleifer, Taglianetti and DeCicco an attempted murder of Abinati. The subject was considered for a 15 Year Reconsideration Hearing for 2011.

After a Statutory Interim Hearing and after exhausting the subject's administrative appeals he did file a petition for habeas corpus claiming that the Commission could not rely on witness Casso. The Parole Commission prevailed in District Court, but on appeal to the 3rd Circuit, lost.

The 3rd Circuit held at the Parole Commission failed to follow its statute and regulation at the

FURNARI.198                                                                          Page 2 of *lb*

SIH because its statements of reasons did not make clear if the Commission was continuing to rely upon the information from Casso, not withstanding Stamboulidis affidavit, or had determined that there was sufficient information not received from Casso to support its finding. Accordingly, the court ordered the Parole Commission to provide Furnari with a new statement of reasons consistent with the court's opinion. On remand, the District Court ordered that the Parole Commission provide a new statement of reasons, or a De Novo Hearing within 90 days of the court's order. By NOA dated 10/31/2000 the Commission ordered that the case be reopened and schedule for a De Novo Hearing before 12/27/2000.

After receipt of the court's opinion, Attorney Gervasoni requested that Assistant US Attorney Kelly provide the Commission with any information he might have which would assist at the new hearing. Mr. Kelly did provide a letter dated 9/25/2000 in which he maintains that although Mr. Casso breached his cooperation agreement with the government and, he has known to have done so by committing numerous acts inconsistent with a cooperation agreement, these acts did not touch upon the historical information he had provided to that point in time. Further, the Assistant US Attorney maintains that much of Casso's information about Furnari had corroborated in substantial measure by other credible witnesses.

Attorney Breitbart forcefully argued and presented evidence to discredit Casso. Casso is now serving 36 life terms for murder. The subject's representative argued that at the time of the Initial Hearing in 1996 the Assistant US Attorney (Kelly) was fully aware of the activities of Casso which ultimately resulted in his breach of cooperation agreement. He implicates Assistant US Attorney Kelly as trying to deceive the Parole Commission by making it appear that Casso was a credible informant when in fact he was totally incredible even at that time.

Mr. Breitbart argued that he finds it inconceivable that the Parole Commission would continue to use any information allegedly provided by Casso through Assistant US Attorney Kelly at this late stage, especially given the repudiation of Mr. Casso by a US Attorney's Office.

Representative Breitbart also maintains that each and every potential independent corroborating witness is not a credible witness and that there is no corroboration offered whatsoever by those individuals. This examiner will go through each of those individuals by name in this report. Representative Breitbart indicates that Assistant US Attorney Kelly is an excellent writer who could weave bits and pieces of information together to make it appear that there was corroboration when in fact there was not and those individuals are not credible themselves.

Representative Breitbart indicated that AUSA Kelly has a vendetta against himself and Furnari. He believes that the genesis of this vendetta occurred a short time after he entered the case in anticipation of the Initial Hearing after Furnari had served 10 years.

Representative Breitbart indicates that when he reviewed the Pre-sentence Investigation he noted that the PSI held the subject accountable for the murder of Glaenti and two other individuals in 1979. The original PSI erroneously indicated that the subject was a member of the "Commission" at that point in time and thus should be held responsible. Representative Breitbart brought this issue to the attention of AUSA Kelly and prevailed upon him to get the



matter corrected.

Representative Breitbart now believes that AUSA Kelly did not understand the effect this correction would have on the parole decision making and parole offense severity rating process. The attorney believes that Kelly was not aware that the Category Eight severity could not be justified if the Glaenti matter was taken out. Consequently, when Kelly became aware of this he then wrote a letter indicating that Furnari was responsible for multiple other homicides and attempted homicides.

The attorney believes that Kelly has now made this entire matter "personal". He believes Kelly felt "conned" by himself, the attorney.

The attorney indicates that in 1996 Kelly told the Parole Commission that Casso was "pure as driven snow" and this was clearly not true and Kelly knew it. He argues Kelly knew Casso had been repudiated for not telling the truth and for committing new criminal acts.

In short, the attorney would like the Parole Commission to find that Mr. Kelly himself has problems with credibility regarding this case.

The attorney points out that the original hearing examiner, Suleski, in 1996 based his decisions on statements of the AUSA Kelly and indicated that he would believe the government attorney over the version of facts presented by Mr. Furnari and his counsel. The representative questions the appropriateness of this entire approach.

Representative Breitbart also brings forth his skepticism of the independence of the Parole Commission in even evaluating this case given his belief that AUSA Kelly has been an "instructor" to the Commission and the Commission staff. To support this position he presented to this examiner a memorandum dated 3/6/97 from Acting Staff Director Sam Shoquist indicating that there would be training which was to be conducted by AUSA David Kelly. Mr. Shoquist has been a decision maker in the past in this case and in the list of the participants noted was this examiner's name. This examiner cannot ever recall attending training with Mr. Kelly or meeting him, although I may indeed have been at that training. In short, the attorney argues that the Parole Commission would be prejudice to support any version given by Mr. Kelly as he has been an instructor for the Parole Commission and close to the Commission and its staff. He therefore doubts the credibility of the Commission itself in being able to evaluate this case.

Representative Breitbart did not deny the subject's guilt for the charges upon which he was convicted and stressed that these were non violent extortion and threat charges as opposed to serious murder or attempted murder charges. The representative did not deny that the subject was a high ranking member of the Lucchese Crime Family nor that he was on the "Commission". However, he desires that the Parole Commission determine that he is a non violent individual and that there has been no credible evidence to support the allegations of violence. He stated that Furnari's "reputation on the streets is of a non violent benevolent despot". He stressed Mr. Furnari's age of 76 and states that there is no credibility to AUSA Kelly's assertion that if released he would return to organized criminal activity. He believes

that this is ludicrous given the age of Mr. Furnari.

The Commission must determine relative to this hearing whether or not it will utilize information of violent Category Eight behavior as supplied to government attorney by Casso. We must determine whether Casso holds any credibility given his repudiation in the Stamboulidis affidavit. Further, the Parole Commission must gage whether or not the other individuals brought forth as corroborating witnesses by AUSA Kelly are credible and have provided credible corroboration of Casso's statements.

In the case of the Lee Schleifer homicide, Casso indicated that Furnari ordered the execution of Schleifer in 1975. This information was independently corroborated by "Tommy Irish" Carew, who was a Lucchese Family associate. Counsel indicates that Carew testified to this matter in a separate case on 5/26/94 in the E/NY. He was a witness for the prosecution in the Pagliaruzo case. During the course of his testimony he exonerated Furnari. He stated that someone else did it. The subject's representative indicates that AUSA Kelly has completely distorted the facts relative to this matter. He claims that the issue of the Lee Schleifer homicide is a 100 percent pure Casso allegation and has not been corroborated by anyone.

Conspiracy to murder Richard Taglianetti. AUSA Kelly indicated that Tommy Irish Carew also corroborated Casso's account of Furnari issuing a contract in the early 1980s to murder Richard Taglianetti. Steps were taken to carry out the murder but Taglianetti was not located and was not murdered until 1992 by Lucchese Family member George Conte. According to Mr. Kelly, Furnari's role, the reason he ordered the murder was to avenge Taglianetti's murder of the son of Lucchese member Angelo Defendis. This has been corroborated, according to Mr. Kelly, by other government witnesses and former Lucchese Family members D'Arco and Frank Gioia, Jr., both of whom testified for the government on numerous occasions. Mr. Kelly indicated that the fact that the contract was issued in the early 80s when Furnari was a member of the Lucchese Family hierarchy gives more reason to credit the accounts of these witnesses.

The subject's representative argued that Frank Gioia would have been 11 years old in the early 80s. He himself has now been repudiated by the government as a witness as he was involved in seven murders. He indicates Frank Gioia was a bad student in high school at the time of the murders and the planning of the murders.

Representative Breitbart argued that D'Arco and Gioia simply corroborated the story on the streets that there was a contract out due to the murder of Angelo Defendis' son.

Counsel pointed out that in 1992 Furnari had been in prison 6 years. He states that Zappoloa and Conte were the actual killers and the reason the victim was killed because he slapped a woman of a person who was higher in the Mafia hierarchy.

Once again, counsel argues that this is a pure Casso allegation. He states that Kelly uses words to weave the theory of corroboration that does not in actuality exist. He further states that victim Taglianetti was around from the 1980s through 1992 and not gone from the area. He does not find it credible that Taglianetti could have existed and lived if Furnari actually

conspired to murder him as was alleged. He states that the entire charge "belies credulity" as at the time of the murder Furnari was in prison for 6 years.

Assault of James Wolford: Peter Chiodo corroborated Casso's report of Furnari's order to give a beating to Wolford, who is a member of International Painters Union and was interfering with Furnari's extortion of the control of the union. Casso and Chiodo carried out the order. The assault was also corroborated by Curroda "Dino" Marino. Marino was a Lucchese Family associate who pled guilty to racketeering in the E/NY and testified for the government as a cooperating witness.

Once again subject's representative argued that using Casso is completely irrational and AUSA Kelly must have noting else. He states that this is a full Casso charge. He indicates that he defended Chiodo and Marino in a 1993 case called US v. Capaldo which he refers to as US v. Arnold. He states that Furnari was an un-indicted coto conspirator in that case. He states that the jury listened to Chiodo and Marino and his client, Arnold, was acquitted. He states that Chiodo and Marino were simply not credible and not believable and not believed by the jury. He indicates that when given the chance, a jury evaluated the evidence and they said no way. He believes that the fact a prior jury has not believed Chiodo and Marino would suggest that they are not credible witnesses and not capable of providing credible corroboration of Casso's story.

Conspiracy to Assault Joseph Martinelli: Letter dated 9/25/2000 from AUSA Kelly refers to his 8/1/96 letter outlining Furnari's role in the conspiracy to assault Martinelli. The information was provided by Chiodo and corroborated in substantial detail by Carew, D'Arco and Casso. Counsel indicates that it was actually Furnari's son who went to Chiodo and asked for permission to beat Martinelli in regard to an extortion scheme. Carew, on page 4 of the 1996 letter from AUSA Kelly, is noted to have indicated that he did not feel that the son had Furnari Sr., permission to engage in the beating. As a result, counsel points out that Furnari's son was thrown out of the family for lying and blaming the beating on Furnari Sr., and Captain Bobby Amuso. The only reason he was allowed to live was out of respect for the father.

While it appears to this examiner that there is some conflicting information between the witnesses regarding this event and Furnari's role the AUSA maintains that the event was still at the behest of Furnari Sr., and corroborated.

In his letter of 9/25/2000, Mr. Kelly stated that "there is no reason to conclude that, although Casso breached his cooperation agreement and is no longer cooperating with the government, his information concerning Furnari should not be accepted". He indicated that the circumstances which led to the determination of the cooperation agreement and ultimately the conviction of Casso did not touch upon the historical information he had provided. Also, much of Casso's information about Furnari has been corroborated in substantial measure by other credible witnesses. Even without Casso's information, Mr. Kelly indicates that there is compelling information concerning Furnari's role in two murders and two assaults. Moreover, it was pointed out that the US Attorney's Office S/NY believed from cooperators other than Casso, that Furnari, as Capo and Consigliere, was at least indirectly responsible for at least

eleven murders.

This examiner comes to the conclusion that it is credible to believe that a lifelong organized crime member "Furnari" who functioned at very high levels within the organization would reasonably be expected to know of and participate in numerous violent criminal acts, to include murder and multiple murder or conspiracy to murder.

This examiner comes to the conclusion that the government informants, all of whom were organized crime figures, were and are disreputable characters who may not have been truthful all of the time and who may have committed serious criminal acts themselves. However, this examiner firmly believes that this does not invalidate the information which they have supplied to the government while they were cooperating with the government. This examiner believes that the multiplicity of these individuals statements and corroboration of each other and of Casso's statements would suggest that it is more likely than not that the allegations as set forth by AUSA Kelly in his letters to the Parole Commission are true.

If one were to concur with Mr. Furnari and his representative's arguments one would have to believe that the Parole Commission itself is not a credible organization in regard to Furnari's case in that the Commission and its staff is somehow tied to and influenced by AUSA Kelly who had functioned, apparently, as a trainer at a Commission meeting in 1997. This examiner sees no evidence of this and, in fact, I had no recall of Mr. Kelly ever even being in the Parole Commission Office.

Defense Counsel would also have the Commission to believe that AUSA Kelly is not credible himself and is simply carrying on a personal vendetta against Mr. Furnari and his representative. Again, this examiner finds no evidence to support this conjecture.

Mr. Furnari and his representative would have the Parole Commission believe that all of the allegations against him concerning Category Eight behavior alleged by AUSA are 100 percent Casso allegations and thus, standing alone, are not credible given Casso's ultimate repudiation as a government witness and his conviction on 36 murders. This examiner believes the information supplied by AUSA Kelly is credible information and that those government witnesses noted by Mr. Kelly, although organized criminals themselves, is credible corroboration of Casso cooperative statements.

The nature of organized crime itself is not, to use the words of the representative to function as benevolent despots. Rather, organized crimes engages in extreme violent behavior to include murder and conspiracies to murder. This is simply a known historical fact.

This examiner finds it inconceivable that Furnari, functioning at the highest levels of organized crime, which is not even a disputable fact in this case, would be unknowing and non participatory in the extreme violent acts of the organization. Thus, the information given by Casso and corroborating witnesses are lent credibility by the very nature of the organization in which the subject participated and the level in which he participated.

This examiner finds it more likely than not that the subject did participate in the violent acts



that alleged by AUSA Kelly in his letters to the Commission and that the Commission should rely on the information given by Casso notwithstanding the Stamboulidis affidavit.

## II.   Modifications, Additions, Corrections from Prehearing Assessment:

None.

## III.   Institutional Factors:

## A.   Discipline:

Clear conduct.

## B.   Program Achievement:

The subject is currently 76 years old. He emphasized at today's hearing that he has now completed 700 hours of Religious Training. He continues to do well while incarcerated in terms of adjustment to incarceration.

## IV.   Fines, Restitution, Court Assessment:

$240,000 fine. This has not been paid. He paid a $175 non committed fine.

## V.   Release Plans:

The subject plans to release to live with family members in New York or Florida.

## VI.   Representative:

David Breitbart, Attorney at Law, 52 Duane Street, New York, NY 10007-1206. Telephone (212) 608-1313. Fax No. (212) 619-2767.

The counsels comments are incorporated in the Present Offense Section above.

## VII.   Risk:

The subject is an extreme risk to the community when released. Historically, through this examiner's 25 years of experience in the Correctional and Criminal Justice fields, I am aware that individuals involved in large organized criminal activities are many times elderly individuals. The counsel has indicated that if the subject is released from prison he would not be a threat to the community and would simply live with family members for the remaining years he has left in his life. This is in direct contradiction to the belief of the AUSA Office. AUSA Kelly has indicated that the subject has almost a mythical reputation within La Cosa Nostra and would be welcomed back by the family and once again become a major participant in this organized criminal activity.

FURNARI.198                                                                                    Page 8 of 16

 

This examiner believes that a decision in excess of 48 months above the minimum Category Eight guidelines is appropriate to this case given that the Lee Schleifer murder was of a perspective informant/witness. The murder of Taglianetti was a contract murder. Parole Commission rules suggest that murder or conspiracy to murder under these circumstances would suggest that parole not be granted in a case.

## VIII. Evaluation:

The applicable guideline range is 100+ months. The subject has currently served 169 months as of 12/9/2000. Your offense behavior is rated as Category Eight severity because it involved murder and conspiracy to murder and multiple separate acts of extortion through racketeering offenses.

After review of all relevant factors and information presented, a decision more than 48 months above the minimum guidelines is warranted because you were involved in the hierarchy, first as a Capo and later as a Consigliere of a major organized crime organization and were involved either directly in the planning or approval of murder and/or attempted murder. Further, the murder of Lee Schleifer was of a perspective informant/witness and the conspiracy to murder/murder of Richard Taglianetti was a contract murder. The Commission has determined that there is sufficient corroboration of information provided by Casso to rely upon the information supplied by Casso notwithstanding the affidavit from AUSA Stamboulidis of the E/NY.

## XI. Panel Recommendation:

Refer to Commissioner for Original Jurisdiction consideration. Continue to a 15 Year Reconsideration Hearing, December 2015.

## ADDENDUM:

At the conclusion of the hearing this examiner gave counsel the opportunity to present all written documentation he had in his possession to support his allegations concerning the credibility of the Commission, Casso and all alleged corroborating witnesses. This examiner has accepted those and noted them and made them a part of the file. Counsel did speak to each and every submission as he was making his arguments which have been related above.

This examiner did recess the hearing for a few moments relative to counsel's request to discuss any further items with his client near the end of the hearing. I then continued the hearing after which time counsel stressed the update of religious hours Furnari has participated in and his release plans.

## ADDENDUM BY SHOQUIST:

Fifteen year reconsideration hearing date should be December, 2011 (i.e.: the same date previously ordered) to avoid appearance of vindictiveness in reconsideration date being later

FURNARI.198                                                                                      Page 9 of ǀǀ



after court-ordered hearing.  Correct reconsideration date is December, 2011.

PAH
December 16, 2000



**U.S. Department of Justice**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

---

Name: FURNARI, Christopher

Register Number: 19815-054                    Institution:   Allenwood FCI

---

In the case of the above-named, the following parole action was ordered:

Continue to 15-Year Reconsideration hearing (December 2011).

### REASONS:

Your offense behavior has been rated as Category Eight severity because it involved murder and conspiracy to murder and multiple separate acts of extortion through racketeering offenses. Your salient factor score (SFS-98) is 8. You have been in federal confinement as a result of your behavior for a total of 169 months as of December 8, 2000. Guidelines established by the Commission indicate a range of 100 + months to be served before release for cases with good institutional adjustment and program achievement. After review of all relevant factors and information presented, a decision exceeding the lower limit of the applicable guideline category by more than 48 months is warranted based on the following pertinent aggravating factors: You were involved in the hierarchy, first as a Capo and later as a Consigliere of a major organized crime organization and were involved either directly in the planning or approval of murder and/or attempted murder. Further, the murder of Lee Schleifer was of a prospective informant/witness and the conspiracy to murder/murder of Richard Taglianetti was a contract murder. The Commission has determined that there is sufficient corroboration of information provided by Casso to rely upon the information supplied by Casso notwithstanding the affidavit from AUSA Stamboulidis of the Eastern District of New York.

As required by law, you have also been scheduled for a statutory interim hearing during December 2002.

The above decision is appealable to the National Appeals Board under 28 C.F.R. 2.26. You may obtain appeal forms from your caseworker or U.S. Probation Officer and they must be filed with the Commission within thirty days of the date of this Notice.

See the attached sheet for your individual item points and explanation for the Salient Factor Score.

cc:     U.S. Probation Office
        Southern District of New York
        500 Pearl Street
        Sixth Floor
        New York, NY 10007-1312

Date: December 27, 2000                         Clerk: vah



Your Pts    Item  Explanation                                    SALIENT  FACTOR  SCORE

1 = . . . A - Prior  convictions/adjudications     (adult  or juvenile)
          None  = 3; One  = 2; Two or three  = 1; Four  or more  = 0

1 = . . . B - Prior  commitments   of more than thirty days (adult  or juvenile)
          None  = 2; One or two  = 1; Three  or more  = 0

3 = . . . C - Age at commencement   of the current offense/prior  commitments   of more than thirty days (adult  or juvenile)

1 = . . . D - Recent  commitment   free period  (three  years).
          No prior commitment  of more than thirty  days (adult or juvenile), or released  to the community  from last such commitment
          at least three years prior to the commencement  of the current  offense  = 1; Otherwise   = 0

1 = . . . E - Probation/parole/confinement/escape        status  violator  this  time
          Neither  on probation,  parole,  confinement,  or escape  status  at the  time  of the  current  offense;  nor committed  as a
          probation,  parole,  confinement  or escape  status  violator  this  time  = 1; Otherwise   = 0

1 = . . . F - Older  offenders
          If the offender  was 41 years or more at the commencement  of the current  offense  (and the total  score from Items A-E above
          is 9 or less) = 1; Otherwise   = 0

| Points  For SFS  Item  C | | | |
| Age | Prior  Commitments | | |
| | 0-3 | 4 | 5 + |
| 26  & Up | 3 | 2 | 1 |
| 22-25 | 2 | 1 | 0 |
| 20-21 | 1 | 0 | 0 |
| 0-19 | 0 | 0 | 0 |

Date:  December    27,  2000                                    Clerk:  vah

      BOP-Allenwood    FCI                  Page  2 of 2              FURNAR1.198

**EXHIBIT**

9

**U.S. Department of Justice**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**NOTICE OF ACTION ON APPEAL**

Name: Furnari, Christopher

Register Number: 19815-094    Institution: Allenwood FCI

The National Appeals Board examined the appeal of the above named and ordered the following:

Affirmation of the previous decision.

**REASONS**:

The Commission has reviewed your appeal and relevant documents from the case file, including the Stamboulidis affidavit, the transcript of Thomas Carew's testimony in the Pagliarulo case. AUSA Kelley's letter of September 25, 2000, and Mr. Breitbart's letter of December 6, 2000. This review does not lead the Commission to conclude that a change in the previous offense severity rating or decision is necessary or appropriate.

The Stamboulidis affidavit raises doubt about the credibility of Anthony Casso, who has linked you to murders/attempted murder. The Commission has reviewed the affidavit and the other available information and concluded that Casso's information about your involvement in these crimes is accurate. The reasoning is as follows.

You were the leader of a crew in the Lucchese crime family when the crimes were committed. Casso was a member of your crew. It is unlikely that you would be unaware of any murders or plots to murder others in order to fulfill the aims of the criminal enterprise given the structure and discipline of the crime family. Even if only the "boss" of a crime family can order or approve a murder, this does not mean that crew leaders are unaware of the ordered murder, especially since crew members, based on orders presumably passed through the crew leaders, carry out the murders. In addition, there appears to be no restriction on crew leaders initiating requests for a murder. The request simply must be approved by the family boss.

In order to accept your claim that you had no knowledge of the murders/attempted murder, the Commission would have to conclude that your crew was a renegade unit which committed crimes for reasons unrelated to the enterprise. This conclusion is not warranted because the motives for the murders/attempted murder committed by your crew were related to the aims/purposes of the enterprise, for example to silence a suspected cooperating individual or punish the wrongdoing of a member or associate. Casso's information simply corroborates an inference that is reasonably made given your leadership role in the crew and Casso's membership in the crew, i.e., that you at the very least knew about, and more likely directed, the murderous activities of members of your crew. You are clearly responsible for the murders/attempted murder under a theory of vicarious criminal liability, and moreover, the information presented shows that you personally solicited or ordered some of the crimes.

Date: April 24, 2001

Clerk: pg

**EXHIBIT**
FURNARI 9



AUSA Kelley's assurance in his September 25, 2000 letter as to Casso's credibility regarding your responsibility for the crimes, despite the Stamboulidis affidavit, may be reasonably credited. The AUSA checked with the U.S. Attorney's Office in the Eastern District of New York and was informed that while Casso's denials of recent allegation of crimes committed by him and attempts to impeach other witnesses' credibility were unreliable, that office believed that historical information provided by Casso on your activities was still credible. This is consistent with the Stamboulis affidavit itself (para. 22) in which the affiant attests to the value of Casso's information on the past organized crime activities of Vincent Gigante, while at the same time noting the unreliability of Casso's statements concerning more recent events. It is not unreasonable to find that Casso may not be worthy of belief when it came to his denials of his own recent serious crimes which could (and did) lead to his removal as a protected federal witness, and still conclude that he had given reliable information on past activities of organized crime. AUSA Kelley has corrected the record in the past when your attorney challenged the accuracy of adverse information in your presentence report. Therefore, there is no reason to suspect that the AUSA would ignore his duty to provide accurate information to the Commission or seek a parole denial in reckless disregard of the truth.

The AUSA has asserted that Casso's information is corroborated by other sources, including Tommy Carew. The excerpt of Carew's testimony in the Pagliarulo case does corroborate certain significant information provided by Casso, information which shows that you employed violence to advance the interests of or to protect the Lucchese crime family. For example, Carew testified that you ordered Carew and others to assault James Wolford in order to clear the way for Jimmy Bishop, a painters union official friendly to the Lucchese family, to exercise more control over the union. Even if the allegations of Carew and others did not result in a conviction for the assault under the reasonable doubt standard of proof, the Commission finds that the information is reliable and that, using the preponderance of the evidence standard, that it is likely you gave the order to assault Wolford.

Carew also states in his testimony that he was given the assignment of meeting Anthony Casso at a club and helping him with "something". The task turned out to be assisting Casso in the disposal of the body of a man who had been shot and killed. The circumstances described therein indicate that the body was that of Lee Schleifer. In his testimony Carew does not identify you as being present at the club after the murder was committed and Schleifer's body was still present. As your attorney points out, this omission is inconsistent with the representation made by AUSA Kelley. However, Carew's testimony indicates that someone other than Casso gave him an assignment to help Casso. Given that you were the person who introduced Carew to the crime family and your crew, that Carew was your driver/bodyguard at the time of this crime, your leadership role in the crew, and Carew's testimony about other "assignments" made by you, it is more likely than not that you were the person who told Carew to help Casso.

Carew also testified that you gave him the assignment of murdering Joseph Abinanti, the son of a Lucchese member. While this particular contract was recalled, Abinanti was later shot and wounded, according to Casso, by Casso and Vic Amuso at your direction. If you issued a murder contract for Carew to kill Abinanti, there is good reason to credit Casso's information that you also issued such a contract to Casso and Amuso.

Carew testified that he stored multiple handguns for the Lucchese crime family. This information

supports the inference that Lucchese family crews, including yours, employed violence to promote the goals of the criminal organization. Therefore, it also indirectly supports the credibility of Casso's statements linking you, a member and leader in the crime family, to murders and attempted murder.

In sum, you have not demonstrated that the information from AUSA Kelley alleging your responsibility for murders and murder plots is unreliable and should not be used to deny you parole. Any one of these crimes (the Schleifer, DeCicco, and Taglianetti murders and the attempt to murder Abinanti) would result in a parole denial under the policy at 28 C.F.R. §2.20. Offense Behavior Severity Index. Notes to Category Eight offenses.



All decisions by the National Appeals Board on appeal are final.

---

Date: April 24, 2001

Clerk: pg 1

**BOP-Allenwood   FCI**                     Page 3 of 3                     FURNARI 198

 

**EXHIBIT**

tabbies*

_10_

**U.S. Department of Justice**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

---

Name: FURNARI, Christopher

---

Register Number: 19815-054          Institution: Allenwood FCI

---

In the case of the above-named, the following parole action was ordered:

In compliance with the order of the United States District Court for the Middle District of Pennsylvania dated July 18, 2002, the Commission has reviewed your case on the record, without reference to or application of the presumption against parole for certain Category Eight offenders contained in the Note to the Parole Guidelines, Table, 28 C.F.R. §2.20. The Commission orders no change in its prior decision that parole is denied and that you serve to a 15 year reconsideration hearing in December, 2011. Without presuming that you should be denied parole, the Commission finds that a decision more than 48 months above the guideline minimum of 100 months (and denial of parole) is warranted based on the following pertinent case factors: as a high-ranking member of a Mafia crime family, you are responsible for multiple murders (Schleifer Taglianetti and DeCicco) and attempted murder (Abinanti) under a theory of vicarious liability, and also because you personally solicited or ordered some of the crimes. These crimes are aggravated by the fact that they were committed in furtherance of the aims of a criminal organization. The Commission continues to rely upon the reasoning and conclusion about the evidence contained in the April 24, 2001 Notice of Action on Appeal.

The above decision is appealable to the National Appeals Board under 28 C.F.R. 2.26. You may obtain appeal forms from your caseworker or U.S. Probation Officer and they must be filed with the Commission within thirty days of the date of this Notice.

cc:          U.S. Probation Office
             Southern District of New York
             500 Pearl Street
             Sixth Floor
             New York, NY 10007-1312

---

Date: August 13, 2002

Clerk: adc

FURNAR1.198



 



U.S. Department of Justice

United States Parole Commission

5550 Friendship Boulevard

Chevy Chase, Maryland 20815-7201

**Notice of Action on Appeal**

| Name: Furnari, Christopher | Institution: Allenwood FCI |
|---|---|
| Register Number: 19815-054 | Date:    November 14, 2002 |

The National Appeals Board examined the appeal of the above named and ordered the following:

Affirmation of the previous decision.

## REASONS:

Your claim that the Commission did not comply with Judge Muir's order is without merit. That order stated that "The Parole Commission shall, within 60 days after the date of this order, reevaluate Furnari's application for parole in accordance with the version of 28 C.F.R. §2.20 in effect when Furnari committed the underlying offenses." Your offense continued into the mid-1980's. The version of §2.20 in effect since 1979 has contained guideline ranges with no upper limit. Your claim that the order "requires a reevaluation employing the November 1984 edition of the Commission's guidelines (that is, the version in effect in early 1985) in its entirety, as it was then interpreted and implemented by the Commission" is patently not supported by the explicit language of the court's order. What the court found to be in violation of the ex post facto prohibition was application to you of the presumption against parole for a person whose offense involved contract murder or murder carried out to further the aims of an ongoing criminal operation. The Commission, in reevaluating your case, did not apply the presumption. It has fully complied with the court's order.

Your claim that you lacked notice is without merit. You received a copy of the court's order compelling the Commission to reevaluate your case within 60 days. The order did not compel a new hearing. You were on notice that any additional arguments you wanted to be before the Commission when it reevaluated your case should be submitted in time for reevaluation within 60 days.

Your claim that your offense severity has been improperly rated Category Eight is without merit. Judge Muir upheld the Commission's rating of your offense as Category Eight severity. The Board will not revisit that issue. Your interpretation of "present offense behavior" to mean only the offense of conviction is unsupported by law, and contradicted by well-established caselaw.

Your claim that §235(b)(3) of the Sentencing Reform Act requires the Commission to set a release date within your guidelines is without merit for two reasons. First, assuming *arguendo* that your are correct, your guideline range is 100+ months, and the decision the Commission has made in your case is within that range. Second, §235(b)(3) does not, in fact, require the Commission to set a release date within the guidelines; rather, it requires the Commission to set a release date pursuant to 18 U.S.C. §4206.

Your claim that the Commission violated the Third Circuit's decision is without merit. As Judge Muir noted, the Third Circuit's decision did not require the Commission to explain why it continued to believe Casso, but only to "address the question of whether it found Casso reliable". The Commission did address that question, and Judge Muir found the Commission's reasons both legally sufficient and in compliance with the Third Circuit's decision.

 

The Board need not address yet again your claims regarding the credibility of Casso and the other information it considered, as these claims have been litigated and decided against you. Judge Muir held that the Commission's decision in your case was supported by a rational basis in the record. The law of the case is that "The Parole Commission had a rational basis for attributing the Furnari crimes actually committed by others in the Lucchese family."

Finally, your claim that the Commission relied on "inapt aggravating factors" is without merit. The Commission's rule does not require it to specify "aggravating factors", it requires the Commission to "specify the pertinent case factors which it relied upon in reaching its decision". It further provides that "This procedure is intended to ensure that the prisoner understands that individualized consideration has been given to the facts of the case, and not to suggest that a grant of parole is to be presumed for any class of Category Eight offenders." 28 C.F.R. §2.20, Note. All of the factors noted by the Commission in the August 13, 2002 notice of action are "pertinent case factors", and demonstrate individualized consideration of the facts of the case. They therefore fully comply with the Commission's regulations.

All decisions by the National Appeals Board on appeal are final

Cc:



**EXHIBIT**

bobbles

12

## HEARING SUMMARY

**Name: Furnari, Christopher**                                    **Reg No: 19815-054**

### Hearing Parameters

    Hearing Format ............................: Non – Revocation
    Hearing Type ...............................: Statutory Interim
    Hearing Date ...............................: June 8, 2005
    Examiner.....................................: Kathleen A. Pinner
    Institution ...................................: Allenwood FCI-Med

### Sentence Parameters

    Sentence Type...............................: Regular Adult
    MR/Statutory Release ............: 11/24/04
    Full Term Date.............................: 11/15/2086
    Months in Custody.......................: 223 as of 06/15/05
    Fines/Restitution/Assessment ......: $900 assessment; $240,000 fine
    Detainer.........................................: None

*This can't be correct→*
*I think it*
*is (44).*
*PKC*

**Additional text regarding the above parameters:** None

---

### Prior Action & Institutional Factors

**Prior Action:** Please Prehearing Assessments dated 12/05/00 and 03/06/03. The subject was scheduled for a Statutory Interim Hearing (SIH) in December 2002 (See Notice of Action dated December 27, 2000.) The subject completed an I-24 on 10/02/02 applying for an SIH on the November 2002 docket. Subject did not appear on that docket and on 02/26/03, completed an I-24 for the April 2003 docket. He did not appear on that docket. The next I-24 is dated 10/16/03 for the December 2003 docket. On 12/03/03, the hearing examiner filled out a memorandum indicating that the subject had waived his SIH. He appeared on the February 2004 docket and requested a continuance because his representative was unable to appear. He completed an I-24 on 02/24/04, waiving parole consideration. He completed another application on 04/29/04 for the June 2004 docket, but was not heard. He completed the most recent I-24 on 03/22/05 for the instant hearing. I contacted the Case Manager to obtain copies of all the I-24s completed by the subject in this case, but have not yet received them.

**Codefendants:** 1) Corallo, Anthony 08341-016: 100 year sentence. By NOA dated 11/13/97, was continued to a 15 year reconsideration hearing. His offense was rated as Category Eight because it involved murder. His SFS was 4 and gls were 150+ months. The NAB affirmed the decision on 04/18/98. After an SIH, by NOA dated 10/19/99, there was no change in the previous decision. The NAB affirmed on 01/06/00. He died on 08/23/00 at FMCP Springfield.

2) Idelicato, Anthony 19706-054: 40 year sentence later modified to 20 years. By NOA dated 04/29/92,was continued to expiration. The offense behavior was rated as Category Eight, SFS 4 and gls



150+ months. He was released via MR on 04/01/98. He has been violated twice for violation of the assocation condition of supervision.

3) Langella, Gennaro 10405-054: 101 years, 9 months 30 days, aggregate sentence. By NOA dated 06/27/96, was continued for a 15 year reconsideration hearing. His offense was rated as category eight because it involved murder. His SFS was 4 and gls were 150+ months. In addition, he had new criminal conduct of assault, for rescission guidelines of 36-48 months, aggregate guidelines of 186+ months. By OJ Appeal, the decision was affirmed on 12/04/96. At an SIH in 2000, the decision was no change in previous decision. The NAB affirmed on 08/10/00.

4) Persico, Carmine: 74666-158: 100 year sentence. He waived parole consideration.

5) Salerno, Anthony 12812-054: 100 year sentence. Died at FMCP Springfield on 07/22/96.

6) Santoro, Salvatore: 19814-054: 100 year sentence. By NOA dated 01/27/99, he was given a presumptive parole date of 11/13/01 after service of 180 months, based on his poor health. He was 84 years of age and dying of cancer. His offense was rated as Category Eight because it involved murder, SFS was 4 and guidelines were 150+ months. He died on 01/25/00.

7) Scopo, Ralph 10402-054: 100 year sentence. He died at USP, Lewisburg on 03/09/93.

**Representative & Representative's Statement: Attorney Steve LaCheen, Philadelphia, PA, represented the subject today.** Mr. LaCheen requested that another attorney, Flora Edwards, of New York, be permitted to sit in on the hearing as Ms. Edwards had detailed knowledge of the offense and could answer any questions raised by the examiner that Mr. LaCheen would be unable to answer. Mr. Furnari was advised that the examiner would permit Ms. Edwards into the hearing room as a courtesy , but that Ms. Edwards would not be permitted to make a presentation on his behalf.

Mr. LaCheen requested that the Commission either set a presumptive parole date at this hearing for Mr. Furnari or in the alternative, reopen and advance the reconsideration hearing to consider new evidence regarding the unreliability of the informants in this case. Mr. LaCheen stated that there had not been a meaningful review by the Commission in this case, and that there was some "ink in the milk". He said that the subject was sentenced to a 100 year term for a Category Five extortion offense (without threat of physical injury) because the Sentencing Judge was not advised by the U.S. Attorney's office of the unreliability of the informants' statements. He averred that the informants, Anthony Casso and Al D'Arco, lied in order to get a break from the underlying offense behavior in this case. Regarding D'Arco, Mr. LaCheen said that he lied under oath and cannot be deemed credible as to any statements he made regarding the subject's involvement in behavior other than the offense of conviction. The representative submitted a one page memorandum dated 05/29/05 in which he alleges that Mr. D'Arco lied in 14 different instances and that he was an unreliable informant.

According to Mr. LaCheen, it is the purpose of the Parole Commission to compensate for disparity in sentencing handed down by judges and that the primary determinant for rating offense behavior is the severity of the offense, which in this case, was extortion. He submitted a pamphlet entitled, "Education and Training Series. The Sentencing Options of Federal District Judges, which was published by the Federal Judicial Center. The representative highlighted two statements in the pamphlet: the first, on page 1, discusses the Commission's statutory basis for determining the actual release date of a parolable prisoner. Under those guidelines (emphasis added by representative) the primary determinants of an offender's release date are the severity of the offense

**Furnari, Christopher, Reg. No. 19815-054**                  **Page 2 of 6**



committed and the offender's age, prior record, and drug history. On page 2, the representative highlighted the following statement: ...a major function of the parole system is to compensate for disparity in the sentences handed down by the judges. Since, according to Mr. LaCheen, the U.S. Attorney did not inform the Sentencing Judge of Casso's lies, then it was the Commission's responsibility to compensate for the disparity in sentencing. He averred that the Judge Owens imposed the 100 year term because of "milk in the ink"...he was not told of the fact that Casso was a liar.

Regarding the subject's offense behavior, Mr. LaCheen referred to a head note from a Second Circuit decision, *U.S. v. Salerno et al,* 868 F2d 524 (1989). According to Mr. LaCheen, in an extortion case, it is not necessary to prove the victim's fear of retaliation, but only to prove an attempt to instill fear of economic harm, which is what Mr. Furnari's underlying conviction is – an attempt to instill fear not of physical harm, but rather economic harm. Under the RICO statute and the Commission's regulations, the subject's offense could be rated as a Category Five to a Category Seven. Even if rated as a Category Seven, with an SFS of 8, the reparole guidelines are 52-80 months. The subject's sentence is more than 100 times the top of the guidelines and it is not a logical sentencing for the offense behavior.

Mr. LaCheen also referred to a Ninth Circuit case in which Stephen Trott (sp?) then an Assistant Attorney General with the U.S. Department of Justice stated that regarding the successful use of informants, that prosecutors should not rely on the lies of criminals to prove their cases. In this case, Mr. LaCheen said that all the informants lied in order to get a break from their offenses and that it is the Commission's responsibility to "separate the wheat from the chaff". He stated that D'Arco lied under oath on 15 different occasions and the Commission cannot deem him credible. Re: Casso, he lied under oath in this case and in others.

Mr. LaCheen requested that the Commission re-examine this case and that the subject's decision should be based on the crime and offense behavior of which he was convicted, not on lies and irrelevant testimony.

The examiner asked Mr. LaCheen if he had any other information he wished to submit to the Commission for review. He stated that he did not have anything else at the present, but there was additional information which supported his statements today. He was advised that he would be permitted an additional week to submit information to this examiner's attention and that it would be considered prior to a recommendation in this case.

Ms. Edwards faxed additional information to the Commission on June 15, 2005, and the original was sent via federal express and received on June 16, 2005. The submission is a 6 page document, with attached exhibits A through J. The submission addresses the alleged disproportionate sentence received by the subject. The second issue discussed in the submission is an attack on the credibility of Al D'Arco and lists specific instances where he was found to be lying in testimony given after the subject's conviction.

**Prisoner's Statement:** The subject stated that he had nothing to add regarding the issues raised by his representative

Discipline: The subject has maintained clear conduct

SPA: The subject's programming does not warrant SPA consideration. He continues to work as a Library Aide and participates in Adult Continuing Education classes. He is participating currently in a class about classic movies.



**Release Plans:** Not addressed.
**Guideline Parameters, Evaluation & Recommendation**

**Evaluation:** Regarding Mr. LaCheen's argument that the head note in *Salerno* requires that government in extortion cases need only prove an attempt to instill fear of economic harm, that is correct. His statement that the subject only did that, attempt to instill fear of economic harm, is incorrect. Page 8 of the decision indicates the following: "The fact, moreover, that persons knows by the victims to be organized crime figures established and coordinated the elaborate work allocation and payment scheme reinforces the conclusion that the scheme involved at least an attempt to instill fear. See *Carbo v. United States*, 314 F.2d at 740-741 (reputation for dangerousness of underworld figure relevant to issue whether there was an instillation of fear). In this connection, we note that officers of Technical Concrete Construction Corp. and X.L.O. Concrete Corp. testified that (codefendant) Scopo and the Commission used the threat of labor unrest, the disruption of concrete supplies, and the defendants' reputation for violence to enforce the rules of the Club." Based on that statement, I believe that the subject and his codefendants did utilize the threat of actual physical harm and not just economic harm to carry out their extortion activities.

Regarding Mr. LaCheen's argument that the Commission should compensate for disparity in the sentences handed down by judges, I note that the subject appealed the length of his sentence. Page 20 of the *Salerno* decision addresses the issue of sentencing. Other than codefendant Indelicato, each of the codefendants, including the subject, received consecutive twenty year sentences for Count I (RICO conspiracy); Count 2 (substantive RICO), Count 4 (extortion), Count 12 (extortion), and Count 14 (extortion). The Court of Appeals made the following statement" "…Furthermore, although appellants received a number of consecutive sentences and maximum sentences on several counts, as was stated in *Carmona v. Ward* (citation omitted), 'long periods of imprisonment resulting from consecutive sentences and maximum sentences for multiple convictions have in the past been upheld as constitutional.'

Subject also raised the claim on appeal that his sentence violated the eighth amendment. He specifically claimed that his sentence was disproportionate to the gravity of his crime. The subject, along with his codefendants, also claimed that the sentencing judge, in imposing identical one hundred year sentences upon all defendants except Indelicato, engaged in impermissibly "uniform" or mechanistic" sentencing. The Court of appeals addressed that issue as follows: "As we stated recently in *United States v. Gaggi* (citation omitted), 'the Supreme Court has warned that we should not substitute our judgment for that of the sentencing court, but when applying the Eighth Amendment to decide only whether the sentence is within consititutional limits; a review that rarely requires extended analysis.'(citation omitted). As to Furnari (and codefendant Scopo's) contention that their culpability was not as great as their codefendants, Judge Owen noted that although Furnari and Scopo were not "bosses" or "underbosses", Furnari was "consigliere of the Lucchese Family which is…practically the equivalent of the underboss", and that he had been involved in many of the recorded meetings where intimate knowledge of the Commission's violent business was evident. The Court of Appeals also did not find the sentencing to be improperly mechanistic or uniform.

In reviewing this information, I do not believe that the subject's sentence was disparate, or that the Commission has an obligation, as subject's representative argues, to compensate for disparity regarding the subject's sentence. Given the context of the extortion committed by the subject, as a consigliere in the Lucchese Family, I do not believe there is disparity in sentencing.

The second issue raised in the June 15, 2005 submission is that "there was no rational basis to enhance the severity rating above the 48 month range" (page 3 of the document). The representative again argues that



Anthony Casso was not a credible witness. The Commission previously has addressed this issue.  The reviewer is referred to the Notice of Action on Appeal dated April 24, 2001 and this issue will not revisited by this examiner.

The third issue raised in the document is a challenge to the information provided by Al D'Arco at trials subsequent to the subject's trial was not credible. The representative argues , for example, that D'Arco's 1991 testimony in the case of *United States v. Gigante* 93 CR 368 (JBW), in which he said that the subject had a meeting with Vincent Gigante, was a factual impossibility because the meeting was around November 1987 and the subject had been in custody since November 1986. D'Arco also made reference to a date in early 1988 when he said he saw the subject and two others on his way to a Commission meeting in 1988, was also incorrect, since the subject was in custody. Alfonse D'Arco was a former acting Lucchese family boss and was one of three people who provided information to the government about the subject's involvement in several murders. The other two individuals were Anthony Casso (a Lucchese Family hitman) and Thomas Carew (a Lucchese family associate). The reviewer is referred to the third Circuit Court of Appeals decision, No. 99-3701, *Christopher Furnari v. Warden, Allenwood Federal Correctional Institution; United States Parole Commission; Middle District of PA United States Attorney.* Chief Judge Becker (page 5 of the opinion) notes that at the subject's prior parole hearing, his attorney argued that D'Arco's statement regarding Furnari's knowledge of murders carried out when he was consigliere was not credible, because D'Arco was in custody from 1983 until 1986 (when Furnari was consigliere) and would have know about Furnari's involvement only through hearsay. Furnari also claimed at his hearing that there were no murders committed by the family while he was consigliere. AUSA Kelley, NYS, who provided information to the Commission in a submission dated August 1, 1996 about the subject and at the subject's initial parole hearing on December 3, 1996, indicated that Furnari had conceded that D'Arco was an expert on the hierarchy and structure of organized crime and noted that D'Arco had stated that murders committed by Furnari's crew while Furnari was a capo would have been done with his knowledge and consent. In a submission to the Commission dated September 25, 2000. Mr. Kelley noted that Casso's counsel had alleged in a letter dated August 1, 1997 to the prosecutors in the Eastern District of New York that D'Arco had given false testimony in the *Gigante* trial. NYE discounted the allegations for several reasons, to include that D'Arco had given the same or similar testimony in other proceedings prior to the *Gigante* trial and had repeatedly withstood cross-examination. Most importantly, Mr. Kelley verification of the subject's violent past including his direct role in or knowledge of several murders in his letters of August 1, and December 11, 1996. Even accepting, for argument's sake, that D'Arco's recollection of the subject's participation in a meeting in November 1987 and sometime in 1988 which he recounted during testimony at the *Gigante* trial, are not credible because the subject was in custody, I do not believe that the Commission must therefore totally ignore the information provided by D'Arco to the government. As outlined in the Notice of Action on Appeal, the Commission did not include the information provided by D'Arco as the basis for supporting its decision more than 48 months above the minimum guidelines for this Category Eight offender. The NOA refers to the information provided by Anthony Casso, which was corroborated in large part by Tommy Carew detailing the murders committed by Casso, who was member of the subject's crew in the Lucchese crime family.

After review of all the information submitted at the hearing and in the submission of June 15, 2005, this examiner finds no reason to modify the Commission's previous decision of a 15 Year Reconsideration hearing in December 2011. The information submitted does not warrant the setting of a presumptive parole date or the advancement of the 15 year reconsideration hearing.

**Conditions:** None

**Statutory Interim Hearing:**  June 2007

**Guideline Use:  n/a**

**Additional Text:**  None

KAP
June 28, 2005

**Executive Reviewer's Comments:**

●                                          ●                    ┌─────────────────┐
                                                               │    **EXHIBIT**  │
                                                               │       13        │
U.S. Department of Justice                  **Notice of Action**└─────────────────┘
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

| Name: FURNARI, Christopher | Institution: Allenwood FCI-Med |
|---|---|
| Register Number: 19815-054 | Date: July 8, 2005 |

As a result of the hearing conducted on June 8, 2005 the following action was ordered:

No change in 15-Year Reconsideration Date December 2011.

**REASONS**:

Retroactivity does not apply. Neither your recalculated severity rating (old Category **Eight**; new Category **Eight**) nor your recalculated salient factor risk category (old Category **Very Good**, old score 8; new Category **Very Good**, new score **Eight** ) is more favorable. This statement means that a finding has been made by the Parole Commission at your hearing that no regulatory or procedural changes have been made by the Parole Commission since your last hearing which would positively affect your case in terms of offense severity or salient factor scoring.

In addition, you have also been scheduled for a statutory interim hearing during June 2007.

THE ABOVE DECISION IS APPEALABLE.

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:    U.S. Probation Office
       Southern District of New York
       500 Pearl Street, 7th Floor
       New York, NY 10007-1312

EXHIBIT
13

EXHIBIT

14

U.S. Department of Justice                                    **Notice of Action on Appeal**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

| Name: Furnari, Christopher | Institution: Allenwood FCI-Med |
| --- | --- |
| Register Number: 19815-054 | Date:    November 23, 2005 |

The National Appeals Board examined the appeal of the above named and ordered the following:

Affirmation of the previous decision.

### REASONS:

Your first claim is that the Parole Commission exceeded its authority by ordering no change in your 15-year reconsideration hearing in 2011 at a time when you should have been given a parole release date within your guidelines under §235(b)(3) of the Sentencing Reform Act. This is essentially the same claim that you made in your administrative appeal in 2002. The Board rejected your claim then, advising you that your Category Eight guidelines have no upper limit and thus the Commission's decision for you is within your guidelines, and that in any event §235(b)(3) does not require the Commission to give you a decision within your guidelines but rather requires the Commission to set a release date pursuant to 18 U.S.C. §4206 before the Commission goes out of existence. As you may know, on September 29, 2005, the Commission's existence was extended for an additional three years in the United States Parole Commission Extension and Sentencing Commission Authority Act of 2005. You are therefore not entitled to have the Commission set a release date for you at this time, and the Commission did not exceed its authority when it ordered no change in your 15-year reconsideration hearing in 2011.

You have also raised your second claim in a prior administrative appeal, that your guidelines are incorrect because your offense behavior should have been rated as Category Seven rather than as Category Eight and that the Commission erroneously used "unsworn, unsubstantiated, and unreliable information to impose vicarious criminal liability" on you. The Board rejected the claim on April 24, 2001, and finds no need to address it again. The Board notes, in fact, that your claim appears to appeal the findings in the Board's April 24, 2001 Notice of Action. Both a district court and a court of appeals have upheld the Board's April 24, 2001 decision, as modified on November 14, 2002. *See Christopher Furnari v. U.S. Parole Com'n*, Civil No. 4:02-CV-0555 (M.D. Pa., July 18, 2002); *Christopher Furnari v. U.S. Parole Com'n*, Civil No. 4:03-CV-2046 (M.D. Pa., March 10, 2004); *Christopher Furnari v. U.S. Parole Com'n, et al.*, No. 04-2109 (3rd Cir. March 8, 2005). You appealed the district court's decision denying your habeas corpus petition to the Third Circuit, and on March 8, 2005, the court of appeals ruled that the Commission was "within its authority in relying upon conduct other than the offense of [your] conviction, including [your] alleged involvement in murders and an attempted murder for which [you] were neither charged nor convicted." As to your challenge to the Parole Commission's factual findings with respect to your alleged involvement in these other murders, the Third Circuit found "that a rational basis in the record existed for the Commission's conclusions."

Your third claim is that there was significant information in existence but not known at the time of your initial hearing in 2000, and that the information was not properly considered at your statutory interim hearing. The allegedly "significant information" you offer is "that the information provided by Alphonse D'Arco either fails to corroborate Casso or is inherently incredible because it is factually impossible."

Clerk:  EXHIBIT

14

As an initial matter, the Board has reviewed the record and finds that the Commission very carefully examined the information you presented at your statutory interim hearing. See the interim hearing summary, which you were given on September 13, 2005 in response to your FOI request. The fact that the Commission did not agree with your conclusion does not mean that your claim and the information that you provided to support that claim were not considered. The Board adopts the Commission's analysis and conclusion on page 5 of the hearing summary and continues to find that the testimony of D'Arco corroborates Casso and is credible. You yourself have previously conceded that D'Arco "was an expert on the hierarchy and structure of organized crime." *See Furnari v. Warden, Allenwood F.C.I.,* 218 F.3d 250 (3rd Cir. 2000), where the Third Circuit said that "Kelley also noted that Furnari has conceded that D'Arco was an expert on the hierarchy and structure of organized crime, and noted that D'Arco has stated that murders committed by Furnari's crew while Furnari was a capo would only have been done with his knowledge and consent. Kelley stated that there were a number of murders by the family both when Furnari was capo and when he was consigliere." 218 F.3d at 253. In addition, the Board notes that at least two federal judges have found D'Arco to be a highly credible witness. *See United States v. Defede,* 7 F.Supp.2d 390, 395 n. 32 (S.D.N.Y. 1998)(after noting D'Arco's extensive testimony at a jury trial which resulted in the defendant's conviction for two murders, Judge Kaplan concluded that "D'Arco's record suggests that he is quite reliable"); *United States v. Avellino,* 1995 WL 728420 (E.D.N.Y., Nov. 20, 1995)(in response to a credibility challenge to D'Arco as a witness, the court noted that Judge Nickerson had found D'Arco not only "very credible" but "one of the more credible witnesses...[he had] ever heard").

Furthermore, while you attempt to discredit D'Arco by saying that he was not "in the know" about your actions because he was not inducted into the Luchese family until 1982, the information you submitted with your appeal (Exhibit P) shows that he was part of the Luchese family for many years prior to his 1982 induction and "was treated as a member, going to family functions and 'sit downs'." (Exhibit P, pp. 1-2). In addition, if he was not "in the know" about events prior to 1982, he could not have made the statements favorable to you that resulted in the government's January 2, 1992 letter to your sentencing court. *See* Exhibit H. That letter requested the modification of your presentence report based on the testimony of D'Arco that you were a capo in the Luchese family in the 1970's and that you were not made consigliere of the Luchese family until the early 1980's. As a result, because according to D'Arco you were a capo and not consigliere in the late 1970's, the government conceded that you were not sitting on the "Commission" in 1979 when it approved the murders of Carmine Galante, Leonard Coppola, and Giuseppi Turrano and that you "could not have sat on the Commission at the time of the Galante homicide." (Exhibit H)

Finally, you provide an excerpt of cross-examination testimony by D'Arco from a Vincent Gigante trial (Exhibit Q) in support of your assertion that D'Arco is not credible because he "testified that in early 1988, he saw Amuso, Casso and Furnari who were on their way to a Commission meeting," at a time when you were already incarcerated. The excerpt you provide does not support your assertion. When D'Arco was asked "didn't you tell the FBI, around early '88 you recalled Amuso and Casso on their way to see The Robe, as you called him," D'Arco responded that he "never told him 1988. I don't know what they got there, but they're incorrect." The cross-examiner then asked, "So, if they had written down early 1988, they wrote down the wrong date. That's your testimony; am I right," to which D'Arco responded, "Yes." (Exhibit Q, p. 1261).

Your fourth claim is that there was "significant exculpatory evidence" in existence but not known at the time of the statutory interim hearing that proves that you had nothing to do with the murder of Richard Taglianetti. You assert that Taglianetti was not murdered as a result of a contract that you put out on him in1983 for a murder the Luchese Family believed he committed involving a member's son and because of which he fled. Rather, you claim that Taglianetti was murdered after you were imprisoned solely

because he struck his wife's sister, who was George Zappola's wife, after an argument. In support of your claim, you submit an August 28, 2005 affidavit from George Zappola. (Exhibit X). The Board finds that neither your claim nor the affidavit are "evidence that was in existence but not known" at the time of your statutory interim hearing. First, the allegedly exculpatory evidence that Taglianetti's murder was in response to his slapping his sister-in-law is not information that was "unknown" at the time of your 2005 statutory interim hearing, because you made the identical argument during your initial hearing on December 8, 2000. Second, George Zappola's affidavit was obviously not "in existence" at the time of your statutory interim hearing on June 8, 2005, because it was signed on August 28, 2005, nearly three months later. Thus, the claim based on the affidavit was not correctly raised in this administrative appeal, see 28 C.F.R. §2.26, but should have been submitted to the Commission after August 28, 2005 as "new favorable information" under 28 C.F.R. §2.28(a).

Nonetheless, in the interest of expediency, the Board will consider the claim and affidavit in this appeal. The Board rejects your claim and finds that the affidavit does not prove that you had nothing to do with the murder of Richard Taglianetti. The Board finds Zappola's affidavit not to be credible because it was submitted so late, five years after you made this argument at your initial hearing in 2000, and because it is not corroborated, whereas the reason for Taglianetti's murder on which the Commission relied was corroborated by several individuals. Further, Zappola affirms in his affidavit that "Taglianetti was killed only because of what he did to my wife" (Exhibit X), but that assertion is contradicted by evidence in your Exhibits V and W. The Board finds more credible the contradictory evidence contained in the exhibits. First, according to the testimony of an FBI agent set forth in Exhibit V, Taglianetti's argument with his sister-in-law was not the sole or even the most important reason for his murder, but was simply the event that caused the Luchese Family to more vigorously pursue the still existing contract that you put out on him in 1983 when you were the Luchese consigliere. FBI Agent Byrne testified in 1995:

> Basically, Your Honor, there had been a long standing contract to kill Richie Taglianetti going back as far as about 1983. An individual in the Luchese Crime Family, his son was murdered and the Luchese Family believed that Richie Taglianetti had committed the murder and a contract was put on Mr. Taglianetti's life. In the beginning they couldn't locate Mr. Taglianetti and it was not really fully pursued when they first couldn't find him **and the contract was just always in effect.** And then there came a time shortly before he was killed when Mr. Taglianetti and Louise Zappola who is the wife of a Luchese capo, they had a dispute and Richie Taglianetti slapped Louise Zappola around. Then once again they put a full court press on to try to find Mr. Taglianetti and kill him. ... They started looking for him and eventually they came to a plan where they would have two sets of shooters and they would put surveillance basically 24 hours a day on his house until one set of shooters located him and killed him. ... Eventually one group of shooters got Mr. Taglianetti coming out of his house and they shot and killed him.

(Exhibit V, pp.8-9)(bold added). Second, as shown in Exhibit W, when Zappola pleaded guilty to Taglianetti's murder, he never mentioned avenging his wife's honor or her being "slapped around" by Taglianetti as a reason for the murder. He affirmed that the murder was to advance his position in the racketeering enterprise. Zappola testified at the plea hearing that he conspired with others to murder Taglianetti "for the purpose of maintaining and increasing my position in an association in fact enterprise, consisting of myself and others, which enterprise engaged in racketeering activity" (Exhibit W, p. 53), and that he "murdered and aided and abetted the murder" of Taglianetti "for the purpose of maintaining and increasing my position in an association in fact enterprise consisting of myself and others, which enterprise engaged in racketeering activity" (Exhibit W, p. 54).

Finally, the Board does not find exculpatory Zappola's statement in his affidavit that you did not communicate with him after your incarceration or directly instruct him to kill Taglianetti. The Board

does not find that the contract simply "lapsed" with the passage of time, a conclusion that is supported by the FBI Agent's testimony. As the Luchese consigliere, you put the Taglianetti contract in place before you were incarcerated and it needed no further direction from you.

Your fifth claim is that the 100-year sentence imposed on you by the court was "grossly disproportionate" and is a mitigating circumstance that the Commission can and should remedy. You compare your sentence to sentences imposed on other defendants in other cases, but not to your own co-defendants. The Board refers you to the Second Circuit's decision, *United States v. Salerno*, 868 F.2d 524, 542-43 (2d Cir. 1989), where the court affirmed your 100-year sentence and the 100-year sentences imposed on all but one of your co-defendants. The Second Circuit found that your 100-year sentence was constitutional and it rejected your argument that your sentence was disproportionate to your crime, pointing out that you were a consigliere of the Luchese Family and "had been involved in many of the recorded meetings where intimate knowledge of the Commission's violent business was evident." 868 F.2d at 543. The Board agrees with the Commission's conclusion on page 4 of the hearing summary that your sentence was not disproportionate to your crime and it declines to change the Commission's decision for you.

Finally, you request a more lenient decision on the ground of compassion. The Board does not find that a more lenient decision is warranted for you on that basis.

All decisions by the National Appeals Board on appeal are final.

Cc:

CLOSED, PRISNR, PRSLC, REMAND

# U.S. District Court
## Middle District of Pennsylvania (Williamsport)
### CIVIL DOCKET FOR CASE #: 4:98-cv-00222-MM-D



**EXHIBIT**

15

Furnari v. Warden, et al
Assigned to: Honorable Malcolm Muir
Referred to: DB
Demand: $0
Cause: 28:2241 Petition for Writ of Habeas Corpus (federa

Date Filed: 02/11/1998
Jury Demand: None
Nature of Suit: 530 Habeas Corpus
(General)
Jurisdiction: U.S. Government
Defendant

**Petitioner**

**Christopher Furnari**                  represented by **Christopher Furnari**
FCI-ALLENWOOD
P.O. Box 2000
White Deer, PA 17887
PRO SE

**Steven R. Kartagener**
233 Broadway
Suite 3507
New York, NY 10279
212-732-9600
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**Warden**                           represented by **David M. Barasch**
*Allenwood Federal Correctional*              McNees, Wallace and Nurick
*Institution*                                100 Pine Street
P.O.Box 1166
Harrisburg, PA 17108-1166
717-237-5384
Fax: 17172375300
Email: dbarasch@mwn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dulce Donovan**
U.S. Attorney's Office
228 Walnut Street
P.O. Box 11754
Harrisburg, PA 17108
(717) 221-4482

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dulce Donovan**
U. S. Attorney's Office
308 Federal Building
240 West Third Street, P.O. Box 548
Williamsport, PA 17703
717-326-1935
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Respondent**

**United States Parole Commission**    represented by **David M. Barasch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dulce Donovan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dulce Donovan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Respondent**

**M.D. of PA United States Attorney**    represented by **David M. Barasch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dulce Donovan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dulce Donovan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 02/11/1998 | 1 | PETITION FOR WRIT OF HABEAS CORPUS filed by Federal prisoner. Receipt #: 333 70675 Amt: $5.00 (ao) (Entered: 02/11/1998) |
| 02/11/1998 | 2 | BRIEF by petitioner Christopher Furnari IN SUPPORT of Petition for |

|  |  | Writ of Habeas Corpus. (ao) (Entered: 02/11/1998) |
|---|---|---|
| 02/11/1998 |  | ATTORNEY SPECIAL ADMISSION form received from: Steven R. Kartagener forwarded to judge Muir for approval. Receipt #: 333 70676 Amt: $10.00 (ao) (Entered: 02/11/1998) |
| 02/11/1998 |  | REMARK - Case file with docket sheet to PRSLC. Copy of docket sheet to Judge Muir. (ao) (Entered: 02/11/1998) |
| 02/18/1998 | 3 | REQUEST OF ATTORNEY FOR SPECIAL ADMISSION to practice on behalf of Christopher Furnari by attny STEVEN R. KARTAGENER; approved by court (Note: cc of Petition to Scr Attny Registry, & Attny Kartagener with receipt & copy of Local Rules) (kf) (Entered: 02/18/1998) |
| 02/18/1998 |  | REMARK - Doc 3 to PRSLC Belisario from Wmspt to be placed in file (kf) (Entered: 02/18/1998) |
| 02/18/1998 | 4 | ORDER TO SHOW CAUSE: by Judge Malcolm Muir - 1. The Clerk of Ct is directed to serve a copy of the petition for writ of habeas corpus on the respdt and teh US Atty (Docs #1 & #2). W/in 20 days respdts shall respond to the petition. (cc: petnr, respdts w/petition) (ao) (Entered: 02/18/1998) |
| 02/20/1998 |  | REMARK - Doc #4 to PRSLC. (ao) (Entered: 02/20/1998) |
| 03/03/1998 | 5 | MOTION by defendants Warden, United States Parole, M.D. of PA United States Attorney to extend time to file their response to Court's Show Cause Order of 2/18/98 ; c/s (kf) (Entered: 03/03/1998) |
| 03/03/1998 |  | REMARK - Doc 5 to PRSLC Belisario from Wmspt (kf) (Entered: 03/03/1998) |
| 03/12/1998 | 6 | ORDER by Judge Malcolm Muir: granting motion to extend time to file their response to Court's Show Cause Order of 2/18/98 [5-1] [4-1]; response due on/before 3/30/98 (cc: all counsel) (lg) (Entered: 03/13/1998) |
| 03/13/1998 |  | REMARK - doc 6 to pro se lc (lg) (Entered: 03/13/1998) |
| 03/30/1998 | 7 | RESPONSE by respondents to show cause order/habeas corpus petition [1-1] (lg) (Entered: 03/31/1998) |
| 03/31/1998 |  | REMARK - doc 7 to pro se lc (lg) (Entered: 03/31/1998) |
| 04/27/1998 | 8 | AFFIDAVIT of Steven R. Karatagener on behalf of petitioner in support of his application for an order & judgment (kf) (Entered: 04/27/1998) |
| 04/27/1998 |  | REMARK - Doc 8 to PRSLC Belisario from Wmspt (kf) (Entered: 04/27/1998) |
| 10/23/1998 | 9 | REQUEST (Letter dtd 10/20/98) by counsel petitioner for Oral Arguments to be heard. (ao) (Entered: 10/23/1998) |
| 10/23/1998 |  | REMARK - Doc #9 to PRSLC. (ao) (Entered: 10/23/1998) |

| 10/29/1998 | 10 | LETTER to court from respondent re government position that oral argument is not necessary (kf) (Entered: 10/29/1998) |
| 10/29/1998 | | REMARK - Doc 10 to PRSLC Belisario from Wmspt (kf) (Entered: 10/29/1998) |
| 04/12/1999 | 11 | ORDER by Judge Malcolm Muir denying habeas corpus petition [1-1]. Clerk to close case. Case terminated Based on Court's conclusion herein, there is no basis for the issuance of a certificate of appealability. (cc: all counsel) (bp) (Entered: 04/12/1999) |
| 04/12/1999 | | REMARK - Original Doc #11 to Security from Wmpt. CC Doc #11 to PRSLC Belisario for inclusion in file, to be closed. (bp) (Entered: 04/12/1999) |
| 05/17/1999 | 12 | Notice of appeal by petitioner Christopher Furnari from District Court order filed 4/12/99 [11-2] (Filing fee paid, TPO mailed to attorney, certified copies, notice of appeal, order being appealed, with info/ack letter to USCA. (cc: cnsl, C/R Ct.) Receipt No. & Amt: 333 75871 $105.00. (sm) Modified on 05/20/1999 (Entered: 05/20/1999) |
| 09/03/1999 | 14 | Acknowledgement Received from USCA for receipt of the Notice of Appeal on 8/31/99. (cl) (Entered: 09/08/1999) |
| 09/07/1999 | 13 | Notification by Circuit Court of Appellate Docket Number 99-3701 (sm) (Entered: 09/07/1999) |
| 10/13/1999 | 15 | TRANSCRIPT PURCHASE ORDER for dates: NONE TPO filed by attorney (sm) (Entered: 10/14/1999) |
| 10/13/1999 | | DISTRICT COURT RECORD COMPLETE FOR PURPOSES OF APPEAL (sm) (Entered: 10/14/1999) |
| 10/14/1999 | | Two Certified copy and 1 uncertified copy of docket in lieu of record on appeal transmitted to USCA (sm) (Entered: 10/14/1999) |
| 10/19/1999 | 16 | Acknowledgement Received from USCA of 10/14/99 transmittal of docket entires to be filed as the certified list in lieu of the record (lg) (Entered: 10/20/1999) |
| 11/22/1999 | | REMARK - doc 16 to SCR w/note re pro se lc case - on appeal (lg) (Entered: 11/22/1999) |
| 09/11/2000 | 17 | Certified copy of judgment from USCA reversing and remanding the Decision of the District Court [Appeal [12-1]. Order denying the petition for habeas corpus entered on 4/12/99 be, and the same is hereby vacated, and the case remanded to District Court with the direction that it enter a conditional order granting the petition and directing the Parole Commission to provide a new statement of reasons consistent with the opinion, within a period of time that the District Court shall fix. All of the above in accordance with the opinion of this Court. (ps) (Entered: 09/12/2000) |
| 09/28/2000 | 18 | ORDER by Judge Malcolm Muir: In accordance with the judgment of the |

United States Court of Appeals for the Third Circuit, dated July 12, 2000, IT IS HEREBY ORDERED THAT this matter is remanded to the United States Parole Commission either to provide petitioner, Christopher Furnari, a new statement of reasons consistent with the Court's opinion, or to afford Furnari a de novo hearing within 90 days of the date of this order. IT IS FURTHER ORDERED THAT the Clerk of Court is directed to close this case (Case termed) remanding case to U.S. agency . (cc: all counsel, court; certified copy to U.S. Parole Commission) (kf) (Entered: 09/28/2000)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/15/2006 10:29:36 | | | |
| **PACER Login:** | us4890 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 4:98-cv-00222-MM-DB |
| **Billable Pages:** | 3 | **Cost:** | 0.24 |

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER FURNARI** | : | **CIVIL NO. 4:CV-06-0342** |
| **Petitioner,** | : | |
| | : | **(Petition Filed February 15, 2006)** |
| **v.** | : | |
| | : | **(Muir, D.J.)** |
| **UNITED STATES PAROLE** | : | |
| **COMMISSION, et al.,** | : | |
| **Respondents** | : | **ELECTRONICALLY FILED** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on this 15th day of May, 2006, she served a copy of the attached

## EXHIBITS IN SUPPORT OF RESPONDENT'S RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the places and addresses stated below, which is the last known addresses, and by depositing said envelope and contents in the United States Mail in Harrisburg, Pennsylvania.

Addressee:
Flora Edwards
Suite 1105
61 Broadway
New York, NY 10006

s/ Anita L. Lightner
ANITA L. LIGHTNER
Paralegal Specialist