UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER FURNARI,            :
                               :
        Petitioner             :        No. 4:CV-06-0342
                               :
    vs.                        :        (Petition Filed 02/15/06)
                               :
                               :        (Judge Muir)
UNITED STATES PAROLE           :
COMMISSION, et al.,            :
        Respondents            :

**ORDER**

June 20, 2007

       Christopher Furnari, an inmate presently confined in the

Allenwood  Federal  Correctional  Institution,  White  Deer,

Pennsylvania (FCI-Allenwood) filed this counseled petition for

writ of habeas corpus pursuant to 28 U.S.C. § 2241. Furnari

challenges a November 23, 2005 decision of the United States

Parole Commission denying him release on parole. (Doc. No. 1,

petition).  The instant action is Furnari's fourth habeas corpus

petition  challenging  some  aspect  of  a  Parole  Commission

decision.  For the reasons set forth below, the petition will be

denied.

**Background**

       Furnari is serving a 100-year sentence for racketeering,

extortion, and racketeering conspiracy, imposed by the United States District Court for the Southern District of New York on January 13, 1987.   According to the United States Court of Appeals for the Second Circuit, Furnari was the "consigliere" (counselor) of the Lucchese organized crime family, a position identified as "practically the equivalent of the underboss". See United States vs. Salerno, 868 F.2d 524, 543 (2d Cir. 1989). Furnari's conviction grew out of his participation in "the Commission", a national ruling body of La Cosa Nostra (Mafia) in the United States, the activities of which included the extortion and other racketeering acts which underlie his conviction.  (Id.).

On December 3, 1996, Furnari's initial parole hearing was conducted. By Notice of Action dated January 8, 1997, the Regional Commissioner adopted the hearing examiner's recommendation that Furnari be required to serve to a fifteen-year reconsideration hearing in December, 2011.  (Doc. No. 4, Ex. C, Notice of Action).   On August 19, 1997, the National Appeals Board affirmed that decision.   (Doc. No. 4, Ex. D, Notice of Action on Appeal).  The National Appeals Board found that:

You have properly been held accountable for murders committed to further the purposes of the Lucchese or other crime families. At a minimum, as the capo of a crew in the Lucchese family, you were in a position to be informed of murders ordered by the boss of the family. Given the hierarchical nature of the organization, it is likely that you directed the murderous acts of your crew members. And, in fact, the Parole Commission finds the information from the U.S. Attorney's Office on your personal responsibility for several of the murders (victims Schleifer, Taglianetti, and DeCicco) and attempted murder (victim Abinanti) to be credible and reliable, even though much of the information may have come from Anthony Casso, one of the most violent members of your organization. Reliable information on crimes committed through La Cosa Nostra activities has been provided by members of the criminal organization, including those who have committed violent crimes. Even if Casso has continued to commit or plot other crimes after his debriefing by federal law enforcement, this does not disqualify him as a reliable source concerning your criminal activities within the Lucchese family. In many cases, Casso's information is corroborated by information from other sources such as Carew and D'Arco.

Your parole denial is warranted because you approved or participated in the planning of a contract murder. (Taglianetti), the murder of a potential informant/witness (Schleifer), and a murder and attempted murder to further the aims of an on-going criminal organization (DeCicco and Abinanti, respectively). Any one of these crimes would support a parole denial. There are no mitigating factors, including your age, that justify your parole when weighed against the aggravated nature of the crimes.

Id.

On February 11, 1998, Furnari filed his first petition for writ of habeas corpus before this Court. See Furnari vs. Warden, Civil Action No. 4:98-CV-0222 (M.D. Pa. Feb. 11, 1998). In that petition, Furnari claimed that his rights to due process, as well as the statutory rights afforded him by the Federal statutes and regulations governing parole, were violated in the following ways:

1.    The USPC acted arbitrarily and capriciously when it grounded its denial of petitioner's parole almost entirely on the untested, non-specific allegations of Casso, someone, petitioner believes, should be deemed incredible as a matter of law;

2.    The USPC incorrectly rated petitioner's offense severity as Category Eight, crediting "untested unsupported hearsay allegations" of Anthony Casso.

3.    The government suppressed information revealing that Casso is not a reliable informant.

4.    The USPC violated petitioner's due process right by relying on AUSA Kelley's "conclusory" statement that Casso's allegations are corroborated by D'Arco and Carew.

Id.

On December 9, 1998, during the pendency of petitioner's

4

habeas corpus proceeding before this Court, the Parole Commission provided a statutory interim hearing to Furnari pursuant to 18 U.S.C. §4208(h)(2). (Doc. No. 16, Ex.3., Review Hearing Summary). At that hearing, Furnari claimed that at the time Assistant U.S. Attorney Kelley was presenting Casso's statements to the Parole Commission,[1] other prosecutors were concluding that Casso was not credible and was engaged in new criminal conduct while incarcerated. Id. at p. 3. Furnari presented an affidavit which Assistant U.S. Attorney Stambolidis had submitted in another case, stating that Casso had lied to prosecutors in matters relevant to that case. Id.

The hearing examiner discussed this document and explained his reasons for continuing to credit Casso and corroborating witnesses in the hearing summary. Id. The examiner recommended no change in the prior order that Furnari serve to a 15-year reconsideration hearing in December, 2011. Id. at p.

---

[1]Assistant U.S. Attorney David N. Kelley wrote a letter to the Parole Commission dated August 1, 1996, detailing Furnari's involvement in various crimes, including the murders of Lee Schleifer, Richard Taglianetti and Frank DeCicco, and the attempted murder of Joseph Abinanti. Assistant U.S. Attorney Kelley's letter was based largely on information received from Anthony Casso, Thomas Carew and Alfonso D'Arco. See Furnari vs. U.S. Parole Commission, Civil Action No. 4:02-CV-0555, slip op. at pp. 4-5 (M.D. Pa. April 4, 2002).

5. The Parole Commission adopted that recommendation. (Doc. No. 16, Ex.4, Notice of Action). The Parole Commission did not, however, include the reasons for continuing to rely upon the Casso information notwithstanding the Stambolidis letter on the notice of action. Id.   On April 2, 1999, the National Appeals Board affirmed the decision that Furnari serve to a 15-year reconsideration hearing in 2011. (Doc. No. 16, Ex.5., Notice of Action on Appeal).

By order dated April 12, 1999, this Court denied Furnari's petition for writ of habeas corpus, finding that there was a rational basis in the record for the Parole Commission's decision.   Furnari vs. Warden, Civil Action No. 4:98-CV-0222 (M.D. Pa. Feb. 11, 1998).   Furnari appealed this decision.

The United States Court of Appeals for the Third Circuit took judicial notice of the interim hearing and the notices of action which followed it.[2] See Furnari vs. Warden, 218 F.3d 250 (3d Cir. 2000). The Court of Appeals held that the Parole Commission had erred in failing to "make clear in its decision on the interim hearing whether it continued to believe that the

---

[2]These materials were not before this Court when it made its decision on the habeas corpus petition.

discredited witness [Casso] was credible or otherwise concluded that there was sufficient information from other sources to tie Furnari to murder," and had thereby failed to follow its regulation requiring a statement of reasons for denying parole. Id. at 252. The court held, "[i]t is not possible to tell from [the Appeal Board's affirmance after the interim hearing] whether the Parole Commission continues to rely on Casso and find him credible, or has concluded that there is sufficient additional information tying Furnari to murder to conclude that he is a Category Eight even absent the information provided by Casso." Id. at 256. The Court of Appeals ordered the case remanded to the district court "with instructions to grant Furnari's petition conditionally and order the Parole Commission to provide a new statement of reasons consistent with this decision." Id. at 252.

By Order dated September 28, 2000, this Court, consistent with the Third Circuit's mandate, remanded the action to the Parole Commission, directing that the Commission either provide Furnari a new statement of reasons consistent with the Third Circuit's opinion, or afford him a de novo hearing, within ninety days of the date of this Court's Order.  Furnari vs.

Warden, Civil Action No. 4:98-CV-0222 (Doc. No. 18)(M.D. Pa. Feb. 11, 1998).

On December 8, 2000, the Parole Commission conducted a de novo hearing in which the hearing examiner considered the following:

- A September 25, 2000 letter submitted to the Parole Commission by Assistant U.S. Attorney Kelley, which discussed the circumstances surrounding the Stambolidis affidavit.

- A December 6, 2000 letter from Furnari's attorney in response to Kelley's letter.

- A transcript of trial testimony of Carew in the Pagliarulo case, which was submitted by Furnari at the hearing.

(Doc. No. 16, Ex. 7, Initial Hearing Summary). By Notice of Action dated December 27, 2000, the Parole Commission found that Furnari's offense severity was properly rated as Category Eight because it involved murder, conspiracy to murder and multiple separate acts of extortion through racketeering offenses. (Doc. No. 16, Ex. 8, Notice of Action). The Parole Commission found that a decision more than 48 months above the guideline minimum of 100 months was warranted because of the following aggravating factors:

You were involved in the hierarchy, first as a Capo and later as a Consigliere of a major

8

> organized crime organization and were involved
> either directly [or indirectly] in the planning
> or approval of murder and/or attempted murder.
> Further, the murder of Lee Schleifer was of a
> prospective informant/witness and the conspiracy
> to murder/murder of Richard Taglianetti was a
> contract murder. The Commission has determined
> that there is sufficient corroboration of
> information provided by Casso to rely upon the
> information supplied by Casso notwithstanding the
> affidavit from AUSA Stambolidis of the Eastern
> District of New York.

Id. Finally, the Commission ordered Furnari "continue to a 15-year Reconsideration hearing (December 2011). Id. By Notice of Action on Appeal dated April 24, 2001, the National Appeals Board affirmed the Parole Commission's decision. (Doc. No. 16, Ex. 9, Notice of Action on Appeal).

On April 4, 2002, Furnari filed a second petition for writ of habeas corpus in this Court. Furnari vs. U.S. Parole Commission, Civil Action No. 4:02-CV-0555 (M.D. Pa. April 4, 2002). In his petition, Furnari asserted the following four challenges to the Parole Commission's April 24, 2001 decision:

> 1. The Parole Commission violated due process,
>    the controlling statute, its own regulations
>    and the law of the case, when it failed to
>    provide adequate reasons for crediting
>    information supplied by the mob informant
>    whom the government concedes has lied.
>
> 2. The Parole Commission violated the ex post
>    facto clause by relying on a provision of

9

its regulations which created a significant
risk of prolonging Mr. Furnari's
incarceration, as compared with the
provision in effect at the time of
commission of the conviction offenses.

3.   The Parole Commission's decision rests on
evidence lacking sufficient indicia of
reliability to satisfy due process or the
governing statutory criteria, as
authoritatively interpreted in the [Parole
Commission's] own rules, and without a basis
in fact.

4.   The Parole Commission's reliance on conduct
other than the offenses of conviction to set
petitioner Furnari's offense severity
category violates the Commission's own rules
as well as due process.

Id. at pp. 11-12.  By Order dated July 18, 2002, this Court

granted in part and denied in part, Furnari's petition.  Finding

that the Parole Commission's reliance on the retroactive change

violated the Ex Post Facto Clause, this Court directed that

within sixty days of the Court's Order, the Parole Commission

reevaluate Furnari's application for parole in accordance with

the version of 28 C.F.R. § 2.20 in effect when Furnari committed

the underlying offenses.   Id. at p. 28.   This Court further

determined that the Commission's statement of reasons for its

decision was supported by a rational basis in the record and

denied Furnari's petition in all other respects.  Id.

By Notice of Action dated August 13, 2002, in compliance with this Court's July 18, 2002 Order, the Parole Commission reviewed Furnari's case on the record, and found the following:

> In compliance with the order of the United States District Court for the Middle District of Pennsylvania dated July 18, 2002, the Commission has reviewed your case on the record, without reference to or application of the presumption against parole for certain Category Eight offenders contained in the Note to the Parole guidelines Table, 28 C.F.R. §2.20.[3] The Commission orders no change in its prior decision that parole is denied and that you serve to a 15 year reconsideration hearing in December, 2011. Without presuming that you should be denied parole, the Commission finds that a decision more than 48 months above the guideline minimum of 100 months (and denial of parole) is warranted based on the following pertinent case factors: as a high-ranking member of a Mafia crime family, you are responsible for multiple murders (Schleifer, Taglianetti and DeCicco) and attempted murder (Abinanti) under a theory of vicarious liability, and also because you personally solicited or ordered some of the crimes. These crimes are aggravated by the fact that they were committed in furtherance of the aims of a criminal organization. The commission continues to rely upon the reasoning and conclusion about the

---

[3]The Commission's rules contain a presumption against parole for certain Category Eight offenses, specifically: murder committed to silence a victim or witness, contract murder, murder by torture, murder of a law enforcement officers to carry out an offense, and murder committed to further the aims of an on-going criminal operation. 28 C.F.R. §2.20, Note to guidelines table. This provision was not part of the Commission's rules when Furnari committed his offenses.

evidence contained in the April 24, 2001 Notice
of Action on Appeal.

(Doc. No. 16, Ex. 10, Notice of Action).  By Notice of Action on

Appeal dated November 14, 2002, the National Appeals Board

affirmed the Parole Commission's decision.  (Doc. No. 16, Ex.

11, Notice of Action on Appeal).

On November 13, 2003, Furnari filed his third petition

for writ of habeas corpus before this Court.  Furnari vs. U.S.

Parole Commission, Civil Action No. 4:03-CV-2046, Slip Op. at 2-

3 (M.D. Pa. Nov. 13, 2003).  Furnari's petition raised the same

claims that were considered and rejected by this Court in its

July 18, 2002 Order.  By Order dated March 10, 2004, this Court

denied the petition, finding there to be a rational basis in the

Parole Commission's April 24, 2001 decision, as well as the

Commission's August 13, 2002 reevaluation of Furnari's request

for parole.  Id.  On March 8, 2005, the United States Court of

Appeals for the Third Circuit affirmed the denial of Furnari's

petition, also finding that the Commission's findings were

supported by a rational basis.  See Furnari vs. U.S. Parole

Commission, 2005 WL 535390 (3d Cir. 2005).

On June 8, 2005, the Parole Commission conducted a

statutory interim hearing for Furnari.  (Doc. No. 16, Ex. 12,

Hearing Summary).  At the hearing, Furnari's counsel submitted new evidence in support of their argument that Casso and D'Arco were unreliable, presenting lists of alleged lies by each.  Id. at pp. 4-5.  The hearing examiner found that "the information submitted does not warrant the setting of a presumptive parole date or the advancement of the 15 year reconsideration hearing." Id. at p. 5.  Thus, by Notice of Action dated July 8, 2005, the parole Commission ordered "no change in 15-year Reconsideration Date December 2011."  (Doc. No. 16, Ex. 13, Notice of Action).

On November 23, 2005, the Parole Commission issued its final decision affirming the previous decision.  (Doc. No. 16, Ex. 14, Notice of Action on Appeal).  The National Appeals Board explained in detail the reasons for its findings as follows:

> Your first claim is that the Parole Commission exceeded its authority by ordering no change in your 15-year reconsideration hearing in 2011 at a time when you should have been given a parole release date within your guidelines under § 235(b)(3) of the Sentencing Reform Act.  This is essentially the same claim you made in your administrative appeal in 2002.  The Board rejected your claim then, advising you that your Category Eight guidelines have no upper limit and thus the Commission's decision for you is within the guidelines, and that in any event § 235(b)(3) does not require the Commission to give you a decision within your guidelines but rather requires the Commission to set a release date pursuant to 18 U.S.C. § 4206 before the

13

Commission goes out of existence.  As you may know, on September 29, 2005, the Commission's existence was extended for an additional three years in the United States Parole Commission Extension and Sentencing Commission Authority Act of 2005.  You are therefore not entitled to have the Commission set a release date for you at this time, and the Commission did not exceed its authority when it ordered no change in your 15 year reconsideration hearing in 2011.

You have also raised your second claim in a prior administrative appeal, that your guidelines are incorrect because your offense behavior should have been rated as Category Seven rather than as Category Eight and that the Commission erroneously used "unsworn, unsubstantiated, and unreliable information to impose vicarious criminal liability" on you.  The Board rejected the claim on April 24, 2001, and finds no need to address it again.  The Board notes, in fact, that your claim appears to appeal the findings in the Board's April 24, 2001 Notice of Action.  Both a district court and a court of appeals have upheld the Board's April 24, 2001 decision, as modified on November 14, 2002.  *See Christopher Furnari v. U.S. Parole Com'n*, Civil No. 4:02-CV-0555 (M.D. Pa. July 18, 2002); *Christopher Furnari v. U.S. Parole Com'n*, Civil No. 4:03-CV-2046 (M.D. Pa. March 10, 2004); *Christopher Furnari v. U.S. Parole Com'n, et al.*, No. 04-2109 (3rd Cir. March 8, 2005).  You appealed the district court's decision denying your habeas corpus petition to the Third Circuit, and on March 8, 2005, the court of appeals ruled that the Commission was "within its authority in relying upon conduct other than the offense of [your] conviction, including [your] alleged involvement in murders and an attempted murder for which [you] were neither charged nor convicted."  As to your challenge to the Parole Commission's factual findings with respect to your alleged involvement

14

in these other murders, the Third Circuit found "that a rational basis in the record existed for the Commission's conclusions."

Your third claim is that there was significant information in existence but not known at the time of your initial hearing in 2000, and that the information was not properly considered at your statutory interim hearing.  The allegedly "significant information" you offer is "that the information provided by Alphonse D'Arco either fails to corroborate Casso or is inherently incredible because it is factually impossible."

As an initial matter, the Board has reviewed the record and finds that the Commission very carefully examined the information you presented at your statutory interim hearing.  See the interim hearing summary, which you were given on September 13, 2005 in response to your FOI request.  The fact that the Commission did not agree with your conclusion does not mean that your claim and the information that you provided to support that claim were not considered.  The Board adopts the Commission's analysis and conclusion on page 5 of the hearing summary and continues to find that the testimony of D'Arco corroborates Casso and is credible.  You yourself have previously conceded that D'Arco "was an expert on the hierarchy and structure of organized crime."  *See Furnari v. Warden, Allenwood F.C.I.*, 218 F.3d 250 (3d Cir. 2000), where the Third Circuit said that "Kelley also noted that Furnari has conceded that D'Arco was an expert on the hierarchy and structure of organized crime, and noted that D'Arco has stated that murders committed by Furnari's crew while Furnari was a capo would only have been done with his knowledge and consent.  Kelley stated that there were a number of murders by the family both when Furnari was capo and when he was consigliere."  218 F.3d at 253.  In addition, the

Board notes that at least two federal judges have found D'Arco to be a highly credible witness. *See United States v. Defede*, 7 F. Supp.2d 390, 395 n.32 (S.D.N.Y. 1998)(after noting D'Arco's extensive testimony at a jury trial which resulted in the defendant's conviction for two murders, Judge Kaplan concluded that "D'Arco's record suggests that he is quite reliable"); *United States v. Avellino* 1995 WL 728420 (E.D.N.Y., Nov. 20, 1995)(in response to a credibility challenge to D'Arco as a witness, the court noted that Judge Nickerson had found D'Arco not only "very credible" but "one of the more credible witnesses...[he had] ever heard").

Furthermore, while you attempt to discredit D'Arco by saying that he was not "in the know" about your actions because he was not inducted into the Lucchese family until 1982, the information you submitted with your appeal (Exhibit P) shows that he was part of the Lucchese family for many years prior to his 1982 induction and "was treated as a member, going to family functions and 'sit downs'." (Exhibit P, pp. 1-2). In addition, if he was not "in the know" about events prior to 1982, he could not have made the statements favorable to you that resulted in the government's January 2, 1992 letter to your sentencing court. *See* Exhibit H. That letter requested the modification of your presentence report based on the testimony of D'Arco that you were a capo in the Lucchese family in the 1970's and that you were not made consigliere of the Lucchese family until the early 1980's. As a result, because according to D'Arco you were a capo and not consigliere in the late 1970's, the government conceded that you were not sitting on the "Commission" in 1970 when it approved the murders of Carmine Galante, Leonard Coppola, and Giuseppi Turrano and that you "could not have sat on the Commission at the time of the Galante homicide." (Exhibit H).

16

Finally, you provide an excerpt of cross-examination testimony by D'Arco from a Vincent Gigante trial (Exhibit Q) in support of your assertion that D'Arco is not credible because he "testified that in early 1988, he saw Amuso, Casso and Furnari who were on their way to a Commission meeting," at a time when you were already incarcerated. The excerpt you provide does not support your assertion. When D'Arco was asked "didn't you tell the FBI, around early '88 you recalled Amuso and Casso on their way to see The Robe, as you called him," D'Arco responded that he "never told him 1988. I don't know what they got there, but they're incorrect." The cross-examiner then asked, "So if they had written down early 1988, they wrote down the wrong date. That's your testimony; am I right," to which D'Arco responded, "Yes." (Exhibit Q, p. 1261).

Your fourth claim is that there was "significant exculpatory evidence" in existence but not known at the time of the statutory interim hearing that proves that you had nothing to do with the murder of Richard Taglianetti. You assert that Taglianetti was not murdered as a result of a contract that you put out on him in 1983 for a murder the Lucchese Family believed he committed involving a member's son and because of which he fled. Rather, you claim that Taglianetti was murdered after you were imprisoned solely because he struck his wife's sister, who was George Zappola's wife, after an argument. In support of your claim, you submit an August 28, 2005 affidavit from George Zappola. (Exhibit X). The Board finds that neither your claim nor the affidavit are "evidence that was in existence but not known" at the time of your statutory interim hearing. First the allegedly exculpatory evidence that Taglianetti's murder was in response to his slapping his sister-in-law is not

information that was "unknown" at the time of
your 2005 statutory interim hearing, because you
made the identical argument during your initial
hearing on December 8, 2000.   Second, George
Zappola's affidavit was obviously not "in
existence" at the time of your statutory interim
hearing on June 8, 2005, because it was signed on
August 28, 2005, nearly three months later.
Thus, the claim based on the affidavit was not
correctly raised in this administrative appeal,
see 28 C.F.R. § 2.26, but should have been
submitted to the Commission after August 28, 2005
as "new favorable information" under 28 C.F.R. §
2.28(a).

Nonetheless, in the interest of expediency, the
Board will consider the claim and affidavit in
this appeal.   The Board rejects your claim and
finds that the affidavit does not prove that you
had nothing to do with the murder of Richard
Taglianetti.       The   Board   finds   Zappola's
affidavits not to be credible because it was
submitted so late, five years afer you made this
argument at your initial hearing in 2000, and
because it is not corroborated, whereas the
reason for Taglianetti's murder on which the
Commission relied was corroborated by several
individuals.   Further, Zappola affirms in his
affidavit that "Taglianetti was killed only
because of what he did to my wife" (Exhibit X),
but that assertion is contradicted by evidence in
your Exhibits V and W.   The Board finds more
credible the contradictory evidence contained in
the exhibits.   First, according to the testimony
of   an   FBI   agent   set   forth   in   Exhibit   V,
Taglianetti's argument with his sister-in-law was
not the sole or even the most important reason
for the murder, but was simply the event that
caused the Lucchese Family to more vigorously
pursue the still existing contract that you put
out on him in 1983 when you were the Lucchese
consigliere. FBI Agent Byrne testified in 1995:

18

Basically, Your Honor, there had been a long standing contract to kill Richie Taglianetti going back as far as about 1983.   An individual in the Lucchese Crime Family, his son was murdered and the Lucchese Family believed that Richie Taglianetti had committed the murder and a contract was put on Mr. Taglianetti's life.   In the beginning they couldn't locate Mr. Taglianetti and it was not really fully pursued when they first couldn't find him **and the contract was just always in effect**. And then there came a time shortly before he was killed when Mr. Taglianetti and Louise Zappola, who is the wife of a Lucchese capo, they had a dispute and Richie Taglianetti slapped Louise Zappola around.   Then once again they put a full court press on to try to find Mr. Taglianetti and kill him....They started looking for him and eventually they came to a plan where they would have two sets of shooters and they would put surveillance basically 24 hours a day on his house until one set of shooters located him and killed him....Eventually one group of shooters got Mr. Taglianetti coming out of his house and they shot and killed him.

(Exhibit V, pp. 8-9)(bold added).   Second, as shown in Exhibit W, when Zappola pleaded guilty to Taglianetti's murder, he never mentioned avenging his wife's honor or her being "slapped around" by Taglianetti as a reason for the murder.   He affirmed that the murder was to advance his position in the racketeering enterprise.   Zappola testified at the plea hearing that he conspired with others to murder

Taglianetti "for the purpose of maintaining and increasing my position in an association in fact enterprise, consisting of myself and others, which enterprise engaged in racketeering activity" (Exhibit W, p. 53), and that he "murdered and aided and abetted the murder" of Taglianetti "for the purpose of maintaining and increasing my position in an association in fact enterprise consisting of myself and others, which enterprise engaged in racketeering activity." (Exhibit W, pa. 54).

Finally, the Board does not find exculpatory Zappola's statement in his affidavit that you did not communicate with him after your incarceration or directly instruct him to kill Taglianetti. The Board does not find that the contract simply "lapsed" with the passage of time, a conclusion that is supported by the FBI Agent's testimony. As the Lucchese consigliere, you put the Taglianetti contract in place before you were incarcerated and it needed no further direction from you.

Your fifth claim is that the 100-year sentence imposed on you by the court was "grossly disproportionate" and is a mitigating circumstance that the Commission can and should remedy. You compare your sentence to sentences imposed on other defendants in other cases, but not to your own co-defendants. The Board refers you to the Second Circuit's decision, *United States v. Salerno*, 868 F.2d 524, 542-43 (2d Cir. 1989), where the court affirmed your 100-year sentence and the 100-year sentences imposed on all but one of your co-defendants. The Second Circuit found that your 100-year sentence was constitutional and it rejected your argument that your sentence was disproportionate to your crime, pointing out that you were a consigliere of the Lucchese Family and "had been involved in many of the recorded meetings where inmate knowledge of

the Commission's violent business was evident."
868 F.2d at 543.   The Board agrees with the
Commission's conclusion on page 4 of the hearing
summary   that   your   sentence   was   not
disproportionate to you crime and it declines to
change the Commission's decision for you.

Finally, you request a more lenient decision on
the ground of compassion.   The Board does not
find that a more lenient decision is warranted
for you on that basis.

(Doc. No. 16, Ex. 14, Notice of Action on Appeal).

On March 3, 2006, Furnari filed the instant petition for

writ of habeas corpus in which he raises the following claims

for relief:

1.   The Parole Commission violated 18 U.S.C. §
     4206(a) and §235(b)(3) of the Sentencing Reform
     Act when it ordered a 15-year reconsideration
     hearing for 2011.

2.   The   Parole   Commission's   rating   of
     Furnari's offense severity rating as a
     Category Eight lacks a rational basis
     because   it   demonstrates   a   lack   of
     concern   for   the   probable   accuracy   of
     the   evidence   used   to   support   the
     findings.

3.   The   National   Appeals   Board   denied
     Furnari due process and violated its
     own rules by summarily rejecting the
     exculpatory evidence obtained after the
     hearing.

4.   The Parole Commission has ignored the
     grossly   disproportionate   nature   of
     Furnari's sentence and has abdicated

21

> responsibility to minimize the effects
> of sentencing disparities.

(Doc. No. 1, petition).

## DISCUSSION

It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration  of a valid sentence." Greenholtz vs. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979).  To the extent that any liberty interest exists, it must be created by the applicable parole statute. Id.  Furthermore, even if a liberty interest exists, due process requires only that a hearing be provided, and that the prisoner be given a statement of reasons for denial of parole, if parole is denied.  Board of Pardons vs. Allen, 482 U.S. 369 (1987).

As to a parole decision rendered by the Commission, it is well settled that the determination of eligibility for parole has been committed by Congress to the discretion of the Commission.  United States vs. Addonizio, 442 U.S. 178 (1979); Campbell vs. United States Parole Commission, 704 F.2d 106 (3d Cir. 1983).  The function of judicial review of a Commission decision on a petition for writ of habeas corpus is to determine

whether the Commission abused its discretion.  The Court is not empowered to substitute its judgment for that of the Commission in evaluating habeas petitioner's claims unless the Commission's exercise of discretion represents an egregious departure from rational decision-making.  <u>See</u> Butler vs. United States Parole Commission, 570 F. Supp. 67-77 (M.D. Pa. 1983).

The Court of Appeals for the Third Circuit has routinely recognized that a federal court's review of a decision issued by the Parole Commission is limited.  Furnari vs. Warden, 218 F.3d 250, 254 (3d Cir. 2000).  The standard applied in such a review "'is not whether the [Commission's decision] is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons.'"  <u>Id.</u> (quoting Zannino vs. Arnold, 531 F.2d 687, 691 (3d Cir. 1976).  However, the review should consider whether the Parole Commission "'has followed criteria appropriate, rational and consistent' with its enabling statutes so that its 'decision is not arbitrary and capricious, nor based on impermissible considerations.'"  <u>Id.</u> (<u>quoting</u> <u>Zannino</u>, 531 F.2d at 690).

As the Third Circuit noted in <u>Furnari</u>, "[t]he Commission is required, under 18 U.S.C. § 4206(b), to 'state with particularity the reasons' for a denial of parole.  See also 28 C.F.R. § 2.13(c) ('At the conclusion of the hearing, the examiner shall discuss the decision to be recommended by the examiner, and the reasons therefor, except in the extraordinary circumstances of a complex issue that requires further deliberation before a recommendation can be made.')"  <u>Furnari</u>, 218 F.3d at 256.  Furthermore, the Third Circuit has stated,

> We do not find it either overly intrusive or contrary to the statute to require the Commission, which is under a statutory mandate to 'state with particularity the reasons for [parole] denial,' to truly provide reasons.  We believe that a statement of reasons must reveal reasoning, and not simply present conclusions, at least where the reasoning is not apparent from the facts of the case.

Marshall vs. Lansing, 839 F.2d 933, 942-43 (3d Cir. 1988).  With the above legal principles in mind, the court will turn to a consideration of the merits of the petition.

**Furnari's First Claim: The Parole Commission violated 18 U.S.C. § 4206(a) and §235(b)(3) of the Sentencing Reform Act when it ordered a 15-year reconsideration hearing for 2011.**

24

The Sentencing Reform Act of 1984 ("SRA") abolished the Parole Commission and repealed federal parole statutes. Pub.L.No. 98-473, Title II, ch. II, 98 Stat.1987, 2017-2034 (codified as amended at 18 U.S.C. § 3551-3742 (1994)). In their place, the SRA set up a determinate sentencing scheme utilizing the sentencing guidelines. <u>Id</u>. The SRA became effective on November 1, 1987, Lewis vs. Martin, 880 F.2d 288, 290 (10th Cir.1989). In order to process prisoners convicted under the old parole system, the life of the Parole Commission was originally extended to five years beyond the effective date of the SRA. <u>See</u> 98 Stat. at 2027, 2032, § 218(a)(5), § 235(b)(1)(A). The five-year provision was amended by § 316 of the Judicial Improvements Act of 1990, and again by the Parole Commission Phaseout Act of 1996. Congress has continued to extend the life of the Parole Commission and it is now scheduled to expire on October 31, 2008. <u>See</u> United States Parole Commission Extension and Sentencing Commission Authority Act of 2005, Pub.L.No. 109-76, 119 Stat.2035, Sec. 2 (September 29, 2005).

When the SRA was originally enacted, § 235(b)(3) instructed the Parole Commission to set a release date for

prisoners before the expiration of the Parole Commission and "within the range that applies to the prisoner under the applicable parole guideline." Pub.L.No. 98-473, § 235(b)(3), 98 Stat.2032 (1984). Just thirty-six days after the SRA became effective, § 235(b)(3) was amended to clarify that release dates were to be set under 18 U.S.C. § 4206. Section 235(b)(3), as amended by the 1987, 1990 and 1996 amendments, reads as follows:

> The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction on the day before the expiration of the fifteen years after the effective date of this Act, pursuant to 4206 of Title 18, United States Code. A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expiration of fifteen years following the effective date of this Act.

See Sentencing Reform Act of 1984, § 235(b)(3), (Title II of Comprehensive Crime Control Act of 1984, Pub.L.No. 98-473, 98 Stat.1987 (1984), as amended by the Sentencing Act of 1987, § 2(b)(2) of Pub.L.No. 100-82, 101 Stat. 1271 (November 1, 1987); the Judicial Improvements Act of 1990, § 316, Pub.L.No. 101-650, 104 Stat. 5115 (December 1, 1990); and the Parole Commission Phaseout Act of 1996, Pub.L.No. 104-232, 110 Stat. 3055 (October 2, 1996)).

Furnari's contention that the Parole Commission is required to set a release date is unavailing. Section 235(b)(3) only requires that a release date be set "early enough to permit consideration of an appeal" before the expiration of the Commission.  It has been estimated that appeals of final release dates will take three to six months. See 28 C.F.R. 2.64 (1987); 52 Fed.Reg. 5763-64 (Feb. 26, 1987). The Parole Commission issued its Notice of Action on July 8, 2005, clearly within the three to six month estimated appeal time. Pursuant to 28 C.F.R. § 2.26, a federal prisoner challenging an adverse parole decision by the Commission must file an appeal to the Board within 30 days from the date of entry of the decision that is the subject of the appeal.  Furnari did not file his appeal until September 19, 2005, some 73 days after the Parole Commission's initial decision.  Even though Furnari filed his appeal well beyond the 30 day statutorily prescribed time frame, his petition was still considered by the Board.  Thus, the Court finds that it was Petitioner's own dilatoriness that caused the window of time for consideration of his appeal to close. Nonetheless, Furnari's allegation that the Commission failed to allow enough time to permit an appeal is of no moment in light

of Congress' decision, on September 29, 2005, while Furnari's petition was pending, to extend the Parole Commission three additional years until October 31, 2008.

With respect to Furnari's argument that the Parole Commission ordered a 15 year reconsideration hearing to be held in December 2011, six years after the authority of the Parole Commission expired, as fully explained above, § 235(b)(3) will require the Parole Commission, prior to its expiration, to set a definite release date (or, as it may lawfully do, to deny parole), but that statute does not require that the Parole Commission set such a date now.

**Furnari's Second Claim:  The Parole Commission's rating of Furnari's offense severity rating as a Category Eight lacks a rational basis because it demonstrates a lack of concern for the probable accuracy (sic) of the evidence used to support the findings.**

As is correctly noted by the National Appeals Board, Furnari's claim that his offense severity level is incorrectly

rated as a Category Eight has been previously raised, considered and upheld by the Board, this Court, and the United States Court of Appeals. <u>See</u> Furnari vs. U.S. Parole Com'n, Civil No. 4:02-CV-0555 (M.D. Pa. July 18, 2002); Furnari vs. U.S. Parole Com'n, Civil No. 4:03-CV-2046 (M.D. Pa. March 10, 2004); Furnari vs. U.S. Parole Com'n, et al., No. 04-2109 (3rd Cir. March 8, 2005)(holding that the Commission was "within its authority in relying upon conduct other than the offense of [your] conviction, including [your] alleged involvement in murders and an attempted murder for which [you] were neither charged nor convicted").   Thus, any further litigation of this issue is considered by this Court to be an abuse of the writ.   <u>See</u> McCleskey vs. Zant, 499 U.S. 467(1991); 28 U.S.C. § 2244(b).

**Furnari's Third Claim:  The National Appeals Board denied Furnari due process and violated its own rules by summarily rejecting the exculpatory evidence obtained after the hearing.**

Furnari claims that the National Appeals Board summarily rejected the Affidavit of George Zappola, submitted after the

29

Parole Board's initial decision, and attesting to the fact that the murder of Richard Taglianetti, which occurred more than five years after petitioner was in custody, had nothing to do with petitioner. However, viewed in the light of the present record, it is apparent that this claim applies more to Furnari's dissatisfaction with the weight and credibility the Parole Commission attributed to the Zappola Affidavit. In this regard it should be noted that the weight and credibility to be given mitigating factors is within the discretion of the Parole Commission.  Slader vs. Pitzer, 107 F.3d 1243, 1249 (7th Cir. 1997) ("The weight to be accorded mitigating factors is clearly entrusted to the discretion of the Commission." (citing Campbell vs. U.S. Parole Commission, 704 F.2d 106, 113 (3d Cir. 1983))); Hackett vs. U.S. Parole Comm'n, 851 F.2d 127, 131 (6th Cir. 1987)("we have no power to overturn a credibility determination made by the Commission").

Although not statutorily obligated to consider the Zappola Affidavit[4], the Parole Commission did consider the

---

[4]Pursuant to 28 C.F.R. § 2.28(a), Furnari should have presented the Zappola Affidavit to the Parole Commission for reopening, citing the affidavit as "new favorable information" in support of reopening.

affidavit, and found it to not be credible, as is evident from the record. (<u>See</u> Doc. No. 16, Ex. 14, pp. 2-4).  Thus, the record reflects that, contrary to Furnari's contention, the mitigating factor, namely the Zappola Affidavit, presented by him in favor of parole was considered by the Parole Commission and thoroughly examined.

> **Furnari's Fourth Claim:  The Parole Commission has ignored the grossly disproportionate nature of Furnari's sentence and has abdicated responsibility to minimize the effects of sentencing disparities.**

Furnari claims that the National Appeals Board rejected his claim that the grossly disproportionate sentence imposed by Judge Owen was based on erroneous and false information, constituting a mitigating circumstance which the Commission is empowered to address.

Once again, as is apparent from the record, the Appeals Board explicitly considered Furnari's sentence and determined that it did not qualify as a mitigating factor.  That the alleged "disproportionate nature" of Furnari's sentence did not compel the Commission to find it was a mitigating factor warranting remedy does not amount to an abuse of discretion by the Commission.  <u>Campbell</u>, 704 F.2d at 113.

To the extent that Furnari is attacking the imposition of the 100-year sentence, a federal criminal defendant's conviction and sentence are only subject to collateral attack in a proceeding before the sentencing court pursuant to 28 U.S.C. § 2255.  E.g., United States vs. Addonizio, 442 U.S. 178, 179 (1979).  The petition for writ of habeas corpus will be denied. An appropriate order will enter.

AND NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.   The petition for writ of habeas corpus
     is **DENIED**.

2.   The Clerk of Court is directed to **CLOSE**
     the case.


s/Malcolm Muir
MUIR
United States District Judge